Isaiah WEBB, Plaintiff,

v.

**DISTRICT OF COLUMBIA, Defendant.**

Civ. A. No. 90–2787 (RCL).

United States District Court,
District of Columbia.

Aug. 22, 1994.

Isaiah Webb, pro se.

Carol Burroughs, Office of Corp. Counsel, Washington, DC, for defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the filings of counsel and the relevant law, defendant's motion to dismiss or, in the alternative, for summary judgment is granted in part and denied in part in accordance with this memorandum opinion.

### I. Factual Summary

In his complaint, plaintiff seeks to recover damages for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and 42 U.S.C. § 1981 ("Section 1981").

On January 23, 1973, defendant District of Columbia hired plaintiff Isaiah Webb as a probationary correctional officer DS–6 with the Department of Corrections. Initial Compl. ¶ 4.[1] Plaintiff received numerous promotions and step increases through 1984, attaining the rank of supervisory correctional officer (captain) DS–11. Id.

Between November 1983 and November 1990, plaintiff alleges that he applied for and was denied promotion to more than 100 DS–12 positions for which he was the most qualified applicant.[2] Second Am.Compl. ("Compl.") at 3. During that period, plaintiff lodged numerous labor complaints and grievances with the D.C. Department of Corrections, the D.C. Office of Employee Appeals,

the D.C. Office of Human Rights, and the U.S. Equal Employment Opportunity Commission. Compl. at 35–36. Plaintiff, a black male, claims that his failure to gain promotion was the result of discrimination on the basis of race and sex in violation of Title VII and Section 1981. Plaintiff alleges race discrimination when the selectee was white, and similarly, sex discrimination when the selectee was female. When the selectee was a black male, plaintiff alleges that the denial of promotion was in retaliation for having filed administrative grievances against defendant, which are activities protected from reprisal. Id. at 3.

Subsequent to filing this action in November 1990, defendant failed to certify plaintiff as qualified for a chaplain position or to promote him to a supervisory correctional officer DS–12 position. Plaintiff contends that defendant's actions constituted reprisal for engaging in protected activity. Id. at 3–4. Plaintiff therefore seeks equitable relief in the form of promotion and $150,000 in back pay.[3] First Am.Compl. ¶ 31.

### II. Legal Standards

#### A. Motion to Dismiss

■ Plaintiff's factual allegations must be presumed true and liberally construed in favor of the plaintiff when reviewing the adequacy of a complaint for purposes of a Rule 12(b)(6) motion. Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C.Cir.1979) (citing Miree v. DeKalb County, Georgia, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, plaintiff must be given every favorable inference that may be drawn from his allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or

---

1. The court uses plaintiff's original Complaint filed on November 13, 1990, since the Second Amended Complaint, which is presently before the court, fails to restate the material facts.

2. These positions included but were not limited to chaplain, supervisory correctional treatment specialist, supervisory parole officer, special assistant, and correctional program officer. Second Am. Compl. at 29.

3. Plaintiff was subsequently promoted to a chaplain DS–12 position at the Modular Facility. Also, plaintiff contends that the discriminatory denial of more than 100 DS–12 positions from 1983–1992 has, in turn, precluded advancement to DS–13 and DS–14 positions, further depriving him of income. See Pl.'s Opp. Def.'s Mot. Dismiss Summ. J. at 15.

opinions couched as factual allegations are not given a presumption of truthfulness." 2A *Moore's Federal Practice*, § 12.07, at 63 (2d ed. 1986) (footnote omitted); *see Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987) (*citing Pauling v. McElroy*, 278 F.2d 252, 254 (D.C.Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth*, 820 F.2d at 1254 (citations omitted); *Phillips*, 591 F.2d at 968.

### B. Motion for Summary Judgment

■ Federal Rule of Civil Procedure 56(e) provides, inter alia, that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the party." Fed.R.Civ.P. 56(e). The Advisory Committee notes that the "very mission of the summary judgment procedures is to pierce the pleadings and assess the proof to see whether there is a genuine issue for trial." Fed.R.Civ.P. 56(e), Advisory Committee Note.[4] For purposes of evaluating a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party.

### C. Proof of Discrimination in Title VII and Section 1981 Cases

■ The standards regarding the entry of summary judgment apply equally to claims involving allegations of employment discrimination. *Paul v. Federal Nat'l Mortgage Assoc.*, 697 F.Supp. 547, 553 (D.D.C.1988) (Lamberth, J.) (*citing Harris v. District of Columbia*, 652 F.Supp. 154, 157–58 (D.D.C. 1986)); *see Skelton v. ACTION*, 668 F.Supp. 25, 29 (D.D.C.1987).

■ In order to prevail under Title VII and Section 1981, a plaintiff must prove purposeful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted) (Title VII plaintiff has "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff"); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989) (citation omitted) (Section 1981 plaintiff has "burden of persuading the jury of intentional discrimination").

■ The Supreme Court set forth the "basic allocation of burdens and the order of presentation of proof" in Title VII cases alleging discriminatory treatment. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this framework, the "plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination." *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378 (*citing Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94). Plaintiff can accomplish this by showing that: (1) he is a member of a protected class; (2) he applied and was qualified for a position for which the employer was seeking applicants; (3) despite his qualification, he was rejected; and (4) after his rejection, the defendant either continued to seek applicants for the position or selected a non-protected class individual. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Patterson*, 491 U.S. at 186–87, 109 S.Ct. at 2377–78.

■ Second, if the plaintiff succeeds in proving his prima facie case, thereby creating an inference of discrimination, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for discharge." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (citation omitted). Finally, should the defendant meet its burden, the plaintiff must prove by a preponderance of the evi-

---

4. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (noting that a court should not send a case to a jury "merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party").

dence that the defendant's proffered reasons were not his true reasons, but were a pretext for discrimination. *Id.* This framework of proof, initially established in Title VII cases, applies equally to claims of discrimination under Section 1981. *Patterson,* 491 U.S. at 186, 109 S.Ct. at 2377.

## III. Analysis [5]

### A. Race and Sex Discrimination Under Title VII

■ In a Title VII cause of action for denial of promotion, the plaintiff must establish that his employer's conduct was discriminatory and that he exhausted the requisite administrative remedies prior to resorting to the courts. *See* 42 U.S.C.A. § 2000e *et seq.* (West Supp.1994); *Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972).

#### 1. Proof of Discrimination

To demonstrate a prima facie case of employment discrimination, plaintiff established that he is a black male and offers evidence that he applied unsuccessfully for numerous positions, maintaining he was more qualified than each individual selected by defendant.[6]

■ When ordered by the court to present the names of "in excess of 100" individuals selected in his stead, plaintiff proffered only 69. Compl. at 3, 10–28. Eleven of the selectees are listed twice.[7] *Id.* at 21–25. Of the remaining 58 selectees, eighteen are black males. Plaintiff fails to establish a prima facie case of race or sex discrimination as to these 18 individuals.[8] Accordingly, the court dismisses these 18 instances of non-selection for failure to state a claim upon which relief can be granted. *See infra* app. A, B.

■ The remaining 40 selectees includes 24 black females, 14 white males, and 2 white females. Thus, plaintiff has established a prima facie case of race discrimination in only 16 instances of non-selection. Similarly, a prima facie case of sex discrimination has been established in 26 cases. Accordingly, the court dismisses an additional 24 instances of non-selection based on race and 14 based on gender. *See infra* app. A, B. ·

Where plaintiff sufficiently established a prima facie case of employment discrimination, defendant District of Columbia must now articulate some legitimate, nondiscriminatory reason for failing to promote plaintiff. However, defendant misapplies this standard, instead seeking summary judgment based on the "totality of the evidence," thereby failing to proffer the *"bona fide* selection criteria" noted in its brief. Def.'s Mot. Dismiss Summ. J. at 8.

■ Notwithstanding this misapplication, defendant does offer exhibits suggesting that applicants with the highest numerical ranking were selected, irrespective of their race or gender. Factors allegedly used to determine that ranking included interview scores, experience, time-in-grade, and administrative assessments.[9] *See* Def.'s Mot. Dismiss

---

5. On May 12, 1992, the court granted leave to plaintiff to file an amended complaint, which dropped the personal appearance and Fourteenth Amendment claims, and granted defendant's motion for partial summary judgment on the Section 1983 claims as a result of plaintiff's failure to establish a discriminatory "practice, policy or custom" on the part of defendant. However, plaintiff again contends that he has demonstrated a discriminatory "policy, custom and practice" by defendant and has established a "prima facie Fourteenth Amendment" claim. *See* Pl.'s Opp. Def.'s Mot. Dismiss Summ. J. at 12–14. The court finds it unnecessary to address the legitimacy of these claims as they are no longer pending in the present action.

6. Plaintiff's qualifications remain unquestioned by defendant.

7. Selectees 41 and 45–54 were noted previously under the same vacancy announcement.

8. The complaint lists only 17 black males selected. However, Charles Williams, a black male, was actually selected under vacancy announcement 88–96. *See* Def.'s Am. Reply Pl.'s Opp. Def.'s Mot. Dismiss Summ. J. at 4.

9. In maintaining that neither the applicants' race or gender played a role in the selection process, defendant also offers evidence that: (1) several individuals were selected under multi-person vacancy announcements where at least one of those selected was a black male; (2) some were selected by black males; and (3) plaintiff declined interviews for some positions. *See* Def.'s Mot. Dismiss Summ. J. at 7–8.

Summ. J., ex. A; Def.'s Resp.Pl.'s 1st Set Interrogs. & Reg.Produc.Docs.Ridley. Nevertheless, the evidence as it relates to individual selections is insufficiently clear and thorough, thereby leaving genuine issues of fact as to race and sex discrimination under Title VII to be decided at trial.[10]

## 2. Exhaustion of Administrative Remedies

■ A Title VII plaintiff must have sought administrative relief from the U.S. Equal Employment Opportunity Commission ("EEOC") prior to resorting to the courts. *See* 42 U.S.C.A. § 2000e *et seq.* (West Supp. 1994); *Love,* 404 U.S. at 523, 92 S.Ct. at 617. In a district with a "706 Agency" which is certified by the EEOC to grant or seek relief from an unlawful employment practice, the EEOC defers the initial review and investigation to said agency. 42 U.S.C.A. § 2000e–5 (West Supp.1994). The D.C. Office of Human Rights ("OHR") serves this function in the District of Columbia. 29 C.F.R. § 1601.80 (1994).

### (a) Acts occurring within the charge-filing period (10/6/87–10/6/88)

Plaintiff Webb lodged a complaint with the OHR on October 6, 1988, charging that since 1984 he was discriminatorily denied promotion to approximately 50 positions to which he applied, "the latest being on August 1, 1988." Def.'s Mot.Dismiss Summ.J., ex. A at 1–4. With respect to the scope of the agency's review, the Final Investigative Report on March 30, 1990, states:

3. While Complainant alleges having applied for promotions tos (sic) the positions

of Chaplain and Major since 1977, the D.C. Department of Human Rights has jurisdiction to consider only those positions Complainant has applied for since October 6, 1987, which is one (1) year prior to the date Complainant filed present Complaint. (Title I, Section 1–2544 of the D.C.Code (1987 ed.))

*Id.* at 21–22.

Accordingly, the OHR investigated only one incident of non-selection, the chaplain position applied for in August 1988 and referenced in plaintiff's charge. *Id.* at 1–20. The OHR dismissed the case on March 30, 1990, finding "no probable cause." *Id.* at 20. The EEOC subsequently rendered its determination on August 17, 1990, and, in according "substantial weight" to the findings of the OHR, it held that the "evidence obtained during the investigation does not establish a violation" of Title VII. Def.'s Mot.Dismiss Summ.J. on 4/24/91, ex. C.

■ Having exhausted the requisite administrative remedies with the OHR and the EEOC, plaintiff's non-selection to the chaplain position for which he applied in August 1988 is presently before the court. The individual selected was a black male,[11] thereby failing to establish a prima facie case of race or sex discrimination. Accordingly, all claims of discriminatory acts based on race or gender animus occurring between October 6, 1987 and October 6, 1988, are hereby dismissed for failure to state a claim under Title VII.[12] *See infra* app. A, B.

### (b) Acts occurring prior to the charge-filing period (before 10/6/87)

Plaintiff maintains that non-selections between 1984 and 1987 were also incorporated

---

10. Although defendant has failed to clearly elucidate its ranking criteria and has been less than meticulous with its paperwork, the court notes that plaintiff has offered little substantive evidence that racial or gender animus played a role in any of the selections. Of the positions for which plaintiff applied, 72% (42 of 58) of the selectees were black and 55% (32 of 58) were male. Black males, the alleged victims of the discrimination, filled 31% (18 of 58) of those positions, while white females, the alleged beneficiaries, filled a mere 3% (2 of 58). Compl. at 10–28. The burden on plaintiff at trial will be weighty to convince the court that the applicants' race or gender was a factor in the selection process.

11. Alfred Minor was selected to the chaplain position under vacancy announcement 88–159. Compl. at 22.

12. Plaintiff does not contend that any other non-selections occurred between October 6, 1987 and October 6, 1988. If there were others that the OHR inadvertently failed to investigate, plaintiff had ample opportunity to inform the EEOC before it rendered its determination six months later, and also could have informed the court in the present complaint. Not having done so, plaintiff cannot make such contentions at trial.

in his charge to the OHR, and as such were within the scope of review by the OHR and the EEOC and are properly before the court today. Plaintiff contends that a more detailed and particular complaint was also filed with the OHR, along with job rejection receipts for over 50 positions. Pl.'s Opp.Def.'s Mot.Dismiss Summ.J. at 11; First Am. Compl. at 7–8. In light of the OHR's alleged failure to investigate these selections or offer his submissions as evidence for the record, plaintiff contends that the OHR process was "tainted and prejudic[ial]." *Id.;* Pl.'s Opp. Def.'s Mot.Dismiss Summ.J. at 2.[13]

Even accepting this bald assertion, plaintiff ignores the fact that all non-selections prior to October 6, 1987, were beyond the scope of review because they were time-barred under both Title VII and the D.C. Human Rights Act. 42 U.S.C.A. § 2000e *et seq.* (West Supp.1994); D.C.Code Ann. § 1–2544 (1987). The timeliness of the administrative charge with the EEOC is a prerequisite to initiating a Title VII action in the District Court. *Jarrell v. U.S. Postal Service,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (*citing Brown v. GSA,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976)). In a district with a 706 agency, a charge is untimely under Title VII if it is not filed with the EEOC within 300 days of the alleged unlawful employment practice.[14] 42 U.S.C.A. § 2000e–5(e)(1) (West Supp.1994); *see Equal Employment Opportunity Commission v. Commercial Office Products Co.,* 486 U.S. 107, 122–24, 108 S.Ct. 1666, 1674–76, 100 L.Ed.2d 96 (1988).

Notwithstanding this limitation, the court may retain subject matter jurisdiction over the 1984–1987 claims if the facts as alleged constitute a "continuing violation." *Stoller v. Marsh,* 682 F.2d 971, 975 n. 3 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983) (citation omitted). The question of whether a violation is "continuing" must be addressed on a case-by-case basis. *Delaware State College v. Ricks,* 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 504 n. 9, 66 L.Ed.2d 431 (1980). The continuing violation theory is limited to either a "series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system." *Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981) (citation omitted). Plaintiff Webb has offered no substantive evidence that the selection criteria or panel evaluations effectively precluded blacks and males from promotion, which would form the basis of a "discriminatory system."[15] Nor are the non-selections a "series of related acts," since evidence is presented that the interview panels and selecting officials varied with each vacancy.

There are no allegations connecting the remote claims with the timely ones, therefore a continuing violation theory is inapplicable. *Id.* at 1077. Additionally, this court has found that denials of promotion and refusals to hire are too isolated to constitute a continuing violation. *See Stoller,* 682 F.2d at 974–75; *Milton,* 645 F.2d at 1074–77 (four of six promotions denied may not be challenged since outside the charge-filing period; the alleged acts of discrimination were unrelated); *De Medina v. Reinhardt,* 444 F.Supp. 573, 576–77 (D.D.C.1978).

Accordingly, where plaintiff's claims were untimely filed, he failed to exhaust the

---

13. Plaintiff makes this assertion without providing copies of such documents for the court. Where plaintiff submitted a notarized complaint to the OHR and no other evidence of plaintiff's filings is included in the OHR's official Certification of Records, the court is strongly inclined to accept the record as complete. *See* Def.'s Mot. Dismiss Summ. J., ex. A.

14. Although not asserted in plaintiff's briefs, it is within the court's discretion to equitably toll the running of the statute of limitations. In the present case, plaintiff states that promotions attained from 1978 to 1983 were subsequent to filing grievances and that by December 1985 he realized that the defendant was "determined not to promote him." First Am. Compl. at 10; Compl. at 35. Where plaintiff had reason to believe that discriminatory employment decisions were occurring several years before but failed to properly seek relief, the court sees no reason to toll the statute. *See Stoller v. Marsh,* 682 F.2d 971, 974 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983).

15. In fact, these same criteria and panel evaluations led to the selection of 72% black applicants and 55% male applicants for the positions in question before the court.

requisite administrative remedies necessary to initiate this action. Thus, plaintiff's Title VII claims of race and sex discrimination, based on acts which occurred prior to October 6, 1987, are hereby dismissed. *See infra* app. A, B.

### (c) Acts occurring subsequent to the charge-filing period but prior to the present suit (10/6/88–11/13/90)

 Although plaintiff failed to exhaust his administrative remedies regarding allegedly discriminatory incidents occurring during the pendency of the OHR and EEOC proceedings, this judicial action nevertheless encompasses these allegations.[16]

Plaintiff maintains that, subsequent to filing his charge with the OHR on October 6, 1988, defendant continued to discriminatorily deny him promotions to numerous positions on the basis of racial and gender animus. However, plaintiff never sought to amend his formal charge with the OHR or the EEOC, nor did he notify these agencies of defendant's actions.

Nevertheless, to force an employee to return to the state agency and the EEOC every time he claims a new instance of discrimination in order to have the courts consider the subsequent incidents along with the original ones would "erect a needless procedural barrier." *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973) (*citing Love*, 404 U.S. at 527, 92 S.Ct. at 619). This Circuit has held that "so long as the employer 1) was on notice that its actions allegedly violated Title VII, and 2) has been afforded an adequate opportunity to pursue a mutually satisfactory resolution with the employee, no purpose would be served by demanding a stream of further administrative pleadings denoted 'charge' or 'complaint.'" *Loe v. Heckler*, 768 F.2d 409, 420 (D.C.Cir.1985) (R.B. Ginsburg, J.). While failing to inform the OHR or the EEOC of defendant's actions, plaintiff Webb did, however, serve "notice" on defendant by lodging formal and informal grievances with the D.C. Department of Corrections, contesting multiple non-selections and assignments as discriminatory. Pl.'s Resp.Def.'s 1st Set Interrogs.Req.Produc.Docs.

Additionally, where plaintiff's initial charge with the OHR alleged both race and sex discrimination and acts of reprisal for previous grievances lodged against the department, requiring him to refile every new instance would serve only to "invite further [acts of] retaliation." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992) (citation omitted) (noting that "all other circuits that have considered this issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court"). Thus, since plaintiff's initial charge alleged both retaliation and racial/gender animus, it follows that he also would be reluctant to refile race or sex discrimination charges, fearing additional acts of reprisal.

For the aforementioned reasons, all such claims subsequent to the October 6, 1988 charge-filing date are deemed properly before the court. As enumerated in the complaint, defendant selected 10 whites under 6 vacancy announcements, while 17 females were selected under 8 announcements.[17] Compl. at 10–28.

Accordingly, all allegations of non-selection based on racial and gender animus in violation of Title VII are limited to 10 claims of race discrimination and 17 of sex discrimination. *See infra* app. A, B. Defendant's motion for summary judgment as to this cause of action is hereby denied.

### B. Race Discrimination Under Section 1981

 In a Section 1981 cause of action for denial of promotion, the plaintiff must establish that his employer's conduct was racially discriminatory, that a "new and distinct relation" would have been created with his employer had he been promoted, and that the claims fall within the appropriate statute of limitations. *See* 42 U.S.C.A. § 1981 (West Supp.1994); *Patterson*, 491 U.S. at 185, 109

---

**16.** Although plaintiff failed to address this issue in his pleadings, the court notes that he does seek relief for these alleged acts of discrimination.

**17.** The court notes that vacancy announcement numbers are not listed for seven selectees. Compl. at 10–28.

S.Ct. at 2377; *Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).

### 1. Proof of Discrimination

The framework of proof established in Title VII cases applies equally to claims of race discrimination under Section 1981. *Patterson,* 491 U.S. at 186, 109 S.Ct. at 2377. As was previously addressed in this text, the evidence as it relates to individual selections is insufficiently clear, leaving genuine issues of fact as to race discrimination under Section 1981 to be decided at trial. *See supra* III(A)(1).

### 2. Denial of Promotion

In a cause of action under Section 1981, the plaintiff must also prove that the defendant's action denied him a right to "make and enforce contracts" enjoyed by white citizens. 42 U.S.C.A. § 1981 (West Supp.1994). Where a plaintiff asserts he was denied promotion due to racial animus, the Supreme Court has noted that this is only actionable if the promotion creates a contract which "rises to the level of opportunity for a *new and distinct relation* " between the parties. *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377 (emphasis added) (citation omitted). The Court in *Patterson* refused to formulate a bright line rule for promotions, relying instead on factual determinations on a case-by-case basis. *Saunders v. George Washington University,* 768 F.Supp. 854, 863 (D.D.C. 1991).

Thus, whether defendant's promotion decisions violated Section 1981 can only be determined by comparing plaintiff's position with those to which he allegedly would have been promoted absent discrimination. In the present case, plaintiff maintains that the positions he pursued would have changed his status from management to non-management and from career to excepted service, and would have withdrawn privileges currently provided under the collective bargaining agreement. Pl.'s Opp.Def.'s Mot.Dismiss Summ.J. at 7–9. While plaintiff's evidence is less than substantial, defendant fails to refute these assertions, only baldly stating that these positions did not involve a "change in status" or an "opportunity for a new and distinct relationship." Def.'s Mot.Dismiss Summ.J. at 2–4.

Thus, whether plaintiff's employment status would have satisfied the "new and distinct relation" test had he been promoted to any of the positions in question is a genuine issue of fact to be decided at trial. *See generally Sitgraves v. Allied–Signal, Inc.,* 953 F.2d 570 (9th Cir.1992); *Wall v. Trust Co. of Georgia,* 946 F.2d 805 (11th Cir.1991).

### 3. Statute of Limitations

The statute of limitations for actions under Section 1981 is drawn from the "most appropriate and analogous state statute of limitations." *Saunders,* 768 F.Supp. at 867 (*citing Wilson,* 471 U.S. at 267, 105 S.Ct. at 1942). The District of Columbia's three-year limitation period for general torts, rather than the one-year limitation for intentional torts, is the most appropriate for Section 1981 actions. *Id.* at 868 (*citing Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 994 (D.C.Cir.1973)); *Alder v. Columbia Historical Society,* 690 F.Supp. 9, 12–13 (D.D.C. 1988).

Therefore, the actionable Section 1981 claims are limited to those positions in which non-blacks were selected within three years of the November 13, 1990 filing date. As enumerated in the complaint, defendant selected 10 whites under 6 vacancy announcements during this period. Compl. at 10–28. Accordingly, all other claims (before November 13, 1990) of race discrimination in violation of Section 1981 are dismissed, and defendant's motion for summary judgment is hereby denied. *See infra* app. C.

## C. Sex Discrimination Under Section 1981

Although not mentioned in his complaint, plaintiff in a subsequent memorandum makes reference to a "claim of non-selection based on ... sex discrimination under § 1981." Pl.'s Opp.Def.'s Mot.Dismiss Summ.J. at 4, 7, 9. The text of Section 1981 reads as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make

and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all the laws and proceedings for the security of persons and property as is enjoyed by *white citizens,* and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.[18]

42 U.S.C.A. § 1981 (West Supp.1994) (emphasis added).

Claims of sex discrimination are not cognizable under Section 1981. *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523, 533 (D.D.C.1981) (*citing Runyon v. McCrary,* 427 U.S. 160, 167–68, 96 S.Ct. 2586, 2592–94, 49 L.Ed.2d 415 (1976)). Plaintiff fails to state a claim upon which relief can be granted, and consequently, defendant's motion to dismiss is granted as it relates to the sex discrimination claim under Section 1981.

### D. Reprisal Discrimination Under Title VII

Plaintiff maintains that as a result of numerous labor complaints lodged against defendant, he was discriminatorily denied promotion to scores of positions in violation of 42 U.S.C. § 2000e–3. In this Title VII cause of action, the plaintiff must establish that his employer's conduct was in reprisal for engaging in protected activity and that he exhausted the requisite administrative remedies prior to initiating this action. *See* 42 U.S.C.A. § 2000e *et seq.* (West Supp.1994); *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984); *Love,* 404 U.S. at 523, 92 S.Ct. at 617.

#### 1. Proof of Retaliation

The allocation of burdens and order of presentation of proof in discrimination cases similarly apply to claims of reprisal under Title VII. *McKenna,* 729 F.2d at 790. Plaintiff must initially establish a prima facie case by demonstrating: "(1) that she en-

gaged in a statutorily protected activity; (2) that the employer took an adverse employment action; and (3) that a causal connection existed between the two." *Id.* If plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id.* Finally, should the employer meet its burden, the plaintiff must prove that the employer's proffered reason is merely a pretext for discrimination. *Id.*

The record is replete with plaintiff's formal and informal labor grievances lodged against defendant throughout the 1980s. Pl.'s Resp.Def.'s 1st Set Interrogs.Req.Produc.Docs.; Def.'s Mot.Dismiss Summ.J., ex. A. Where subsequent to these complaints defendant selected 58 other individuals for positions to which plaintiff was qualified, a prima facie case of reprisal discrimination has been established.[19] As was previously addressed in this text, defendant's proffered reason for non-selection is insufficiently clear, thereby leaving genuine issues of fact as to retaliatory conduct under Title VII to be decided at trial. *See supra* III(A)(1).

#### 2. Exhaustion of Administrative Remedies

With regard to exhaustion of remedies for acts prior to November 13, 1990, the court held previously in this opinion that: 1) all claims prior to October 6, 1987, are dismissed for failing to exhaust the requisite remedies; 2) the chaplain position for which plaintiff applied in August 1988 is the only claim between October 6, 1987 and October 6, 1988, which is properly before the court; and 3) it was unnecessary for plaintiff to exhaust his administrative remedies for those claims [20] between October 6, 1988 and November 13, 1990. *See supra* III(A)(2).

---

**18.** The amendments enacted in 1991 did not affect this subsection.

**19.** Although questions still exist as to the "causal connection" linking the grievances with the denials of promotion, the inference created by 58 non-selections is sufficient to avert summary judgment.

**20.** The complaint lists 38 instances of non-selection under 12 vacancy announcements between October 6, 1988 and November 13, 1990. Compl. at 10–28.

Accordingly, as to acts occurring prior to November 13, 1990, there are 39 instances of non-selection under 13 vacancy announcements which remain cognizable under Title VII.[21] Compl. at 10–28. All other Title VII claims of reprisal discrimination during this period are dismissed, and defendant's motion for summary judgment is hereby denied. *See infra* app. D.

### E. Reprisal Discrimination Under Section 1981

■■■■ Plaintiff contends that the acts of reprisal claimed violative of Title VII are also actionable under Section 1981. However, retaliatory acts are not "per se ... racially discriminatory," and such conduct is "further away from the ambit of § 1981." *Williams v. Nat'l R.R. Passenger Corp.*, 716 F.Supp. 49, 51 n. 2 (D.D.C.1989) (Section 1981 is a "narrow and precise" statute that does not provide a cause of action for retaliatory treatment where it does not relate to the making and enforcement of a contract). Where conduct is not explicitly covered under Section 1981, the court should be reluctant "to read an earlier statute (§ 1981) broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute (Title VII)." *Patterson*, 491 U.S. at 181, 109 S.Ct. at 2375 (parentheticals added) (citation omitted). Since *Patterson*, this court has held that claims of retaliation are no longer actionable under Section 1981. *Saunders*, 768 F.Supp. at 868 ("It seems clear, at least since Patterson, that in this Court the right to make and enforce contracts under § 1981 does not bring with it a separate right against retaliation") (citation omitted); *see Williams*, 716 F.Supp. at 51–52.

Accordingly, the court grants defendant's motion to dismiss as it relates to reprisal discrimination claims under Section 1981.

### F. Claims Arising Since the Commencement of this Action on November 13, 1990

#### 1. Denials of Promotion

■■■■ Since bringing this civil action in 1990, which is a statutorily protected activity, plaintiff contends he was discriminatorily denied promotion to one chaplain DS–12 and two supervisory correctional officer DS–12 positions. Defendant proffered that plaintiff was rated "unqualified" for chaplain and declined an interview for the supervisory correctional officer vacancies. However, plaintiff raises an inference of discrimination by showing he received a "qualified" rating for every chaplain position posted since 1985.[22] *See* Pl.'s Opp.Def.'s Mot.Dismiss Summ.J. at 3–4.

Accordingly, plaintiff raises factual issues to be resolved at trial as to 3 claims[23] of reprisal discrimination under Title VII.

#### 2. Discharge

■■■ Defendant discharged plaintiff on sexual harassment grounds in July 1994. While plaintiff's motion for a preliminary injunction was denied at that time,[24] the court *sua sponte* grants plaintiff leave to amend his complaint, adding a claim of retaliatory discharge and race/sex discrimination under Title VII and race discrimination under Section 1981.

### IV. Conclusion

Plaintiff Webb has raised issues of material fact as to 10 claims of race discrimination in violation of Title VII and Section 1981 and 17 claims of sex discrimination in violation of Title VII, therefore, defendant's motions for partial summary judgment are denied. Plaintiff has failed to state claims upon which relief can be granted as to sex and reprisal

---

**21.** This figure includes black males selected during this period.

**22.** Defendant's affidavit from the selecting official, in which the affiant stated she was unaware that plaintiff had brought the present action, does not sufficiently remove doubt to warrant a grant of summary judgment.

**23.** Even though he declined an interview, plaintiff requested that he still be considered for the supervisory correctional officer positions. In light of the inference of discrimination from the chaplain selection, defendant's proffered reason is also called into question here.

**24.** Order from the bench on July 5, 1994.

discrimination claims under Section 1981, and they are dismissed as a matter of law. With regards to reprisal discrimination under Title VII, plaintiff has raised genuine issues of fact as to 39 claims of non-selection, as well as 3 additional instances since initiating this action. Accordingly, defendant's motion for partial summary judgment as to this cause of action is denied. Finally, whereas plaintiff was discharged on sexual harassment grounds in July 1994, the court *sua sponte* grants plaintiff leave to amend his complaint, adding a claim of retaliatory discharge and race/sex discrimination under Title VII and race discrimination under Section 1981.

A separate order shall issue this date.

## ORDER

This matter comes before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. In accordance with the accompanying memorandum opinion, it is hereby ORDERED:

1. Defendant's motions for partial summary judgment as pertaining to race and sex discrimination in violation of Title VII are DENIED. Plaintiff raises genuine issues of fact as to 10 claims of race discrimination and 17 claims of sex discrimination. All other claims prior to November 13, 1990, are hereby DISMISSED.

2. Defendant's motion for partial summary judgment as pertaining to race discrimination in violation of Section 1981 is DENIED. Plaintiff raises genuine issues of fact as to 10 claims of race discrimination. All other claims prior to November 13, 1990, are hereby DISMISSED.

3. Defendant's motions to dismiss all claims of sex and reprisal discrimination in violation of Section 1981 are GRANTED.

4. Defendant's motion for partial summary judgment as pertaining to reprisal discrimination in violation of Title VII is DENIED. Plaintiff raises genuine issues of fact as to 39 claims of non-selection, as well as 3 additional instances since initiating this action. All other claims prior to November 13, 1990, are hereby DISMISSED.

5. Whereas plaintiff was discharged in July 1994, the court *sua sponte* GRANTS plaintiff leave to amend his complaint to add a claim of retaliatory discharge and race/sex discrimination under Title VII and race discrimination under Section 1981.

6. The court directs plaintiff to move for leave to amend his complaint to add three additional causes of action which have been previously filed with the EEOC, as referenced in plaintiff's memorandum filed August 15, 1994, regarding joinder of claims.

7. Plaintiff's motions for sanctions against defendant, filed on May 16, 1994 and June 20, 1994, are hereby DENIED.

8. Plaintiff's motions to compel defendant to produce documents, filed on June 20, 1994 and June 27, 1994, are hereby DENIED.

SO ORDERED.

Appendix A–1

RACE DISCRIMINATION UNDER TITLE VII
(as listed in Second Am.Compl. at 10–28)

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 1. | Robert O. Peed | W/M | | C,D |
| 2. | Arnold Golden | W/M | | C,D |
| 3. | Donald Baggot | W/M | | C,D |
| 4. | Donald Pullen | W/M | | C,D |
| 5. | James Spiker | W/M | | C,D |
| 6. | Dalciler Roberts | B/F | | B,C,D |
| 7. | Regina Gilmore | B/F | | B,C,D |
| 8. | Earthel Foster | B/F | | B,C,D |
| 9. | Joyce Jones | B/F | | B,C,D |
| 10. | Michelle Elzie | B/F | | B,C,D |
| 11. | Emma Mapp | B/F | | B,C,D |

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 12. | Jeanetta Wood | B/F | | B,C |
| 13. | Adrienne Poteat | B/F | | B,C,D |
| 14. | Patricia Britton | B/F | | B |
| 15. | Denise Shelton | B/F | | B |
| 16. | Barbara Hart | B/F | | B |
| 17. | Shelly Stubbs | B/F | | B |
| 18. | Hazel Smith | B/F | | B |
| 19. | Marian English | W/F | Yes | |
| 20. | Phillipia Riley | B/F | | B |
| 21. | Aloise Cromartie | B/F | | B |
| 22. | Albersynia Quarles | B/F | | B |
| 23. | Gloria Nelson | B/F | | B |
| 24. | Joyce Pittman | B/F | | B |
| 25. | Paul Dame | W/M | Yes | |
| 26. | Paulette Hutchins–Johnson | W/F | Yes | |
| 27. | Josephine Dumas | B/F | | B |
| 28. | Joyce Allen–Mills | B/F | | B |
| 29. | Charles Williams*** | B/M | | B,C |
| 30. | Douglas Stempson | W/M | | F |
| 31. | William Schroeder | W/M | Yes | |
| 32. | James George | W/M | Yes | |
| 33. | Angie Foster | B/F | | B |
| 34. | Steven Smith | W/M | Yes | |
| 35. | Robert Fulton | W/M | Yes | |

\* A — listed previously
 B — no prima facie case
 C — failed to exhaust remedies
 D — untimely
 F — no position listed

\** W — White; B—Black; M—Male; F—Female
\*** See supra note 8.

Appendix A–2

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 36. | Rodney Carter | W/M | Yes | |
| 37. | William Hill | B/M | | B |
| 38. | Warren Little | B/M | | B |
| 39. | Robert Lytle | B/M | | B |
| 40. | David Rapelyea | B/M | | B |
| 41. | Albersynia Quarles | B/F | | A,B |
| 42. | Matthew Mclean | B/M | | B |
| 43. | Bernard Lee | B/M | | B |
| 44. | Alfred Minor | B/M | | B |
| 45. | Jeanetta Wood | B/F | | A,B,C |
| 46. | Adrienne Poteat | B/F | | A,B,C,D |
| 47. | Patricia Britton | B/F | | A,B |
| 48. | Denise Shelton | B/F | | A,B |
| 49. | Barbara Hart | B/F | | A,B |
| 50. | Shelly Stubbs | B/F | | A,B |
| 51. | Hazel Smith | B/F | | A,B |
| 52. | Marian English | W/F | | A |
| 53. | Phillipia Riley | B/F | | A,B |
| 54. | Aloise Cromartie | B/F | | A,B |
| 55(1). | Jerry Moore | B/M | | B,C,D |
| 56(1). | George Taylor | B/M | | B,C,D |
| 55(2). | Luther Cary | B/M | | B |
| 56(2). | John Berry | B/M | | B |
| 57. | Leon Hudson | B/M | | B |
| 58. | Gerald Bowser | B/M | | B |
| 59. | Burnell Krause | W/M | Yes | |
| 60. | Joseph Murray | W/M | Yes | |
| 61. | Babara Marshall | B/F | | B |
| 62. | Babara Matthews | B/F | | B |

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 63. | Harold Nelson | B/M | | B |
| 64. | Daquda Lawrence | B/M | | B |
| 65. | Thomas Sescoe | B/M | | B |
| 66. | Betty Green | B/F | | B,C |
| 67. | Fred Staten | B/M | | B,C,D |

Total: 10

*
A — listed previously
B — no prima facie case
C — failed to exhaust remedies
D — untimely
F — no position listed

** W — White; B—Black; M—Male; F-—Female

## Appendix B–1

### SEX DISCRIMINATION UNDER TITLE VII
(as listed in Second Am.Compl. at 10–28)

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 1. | Robert O. Peed | W/M | | B,C,D |
| 2. | Arnold Golden | W/M | | B,C,D |
| 3. | Donald Baggot | W/M | | B,C,D |
| 4. | Donald Pullen | W/M | | B,C,D |
| 5. | James Spiker | W/M | | B,C,D |
| 6. | Dalciler Roberts | B/F | | C,D |
| 7. | Regina Gilmore | B/F | | C,D |
| 8. | Earthel Foster | B/F | | C,D |
| 9. | Joyce Jones | B/F | | C,D |
| 10. | Michelle Elzie | B/F | | C,D |
| 11. | Emma Mapp | B/F | | C,D |
| 12. | Jeanetta Wood | B/F | | C |
| 13. | Adrienne Poteat | B/F | | C,D |
| 14. | Patricia Britton | B/F | Yes | |
| 15. | Denise Shelton | B/F | Yes | |
| 16. | Barbara Hart | B/F | Yes | |
| 17. | Shelly Stubbs | B/F | Yes | |
| 18. | Hazel Smith | B/F | Yes | |
| 19. | Marian English | W/F | Yes | |
| 20. | Phillipia Riley | B/F | Yes | |
| 21. | Aloise Cromartie | B/F | Yes | |
| 22. | Albersynia Quarles | B/F | Yes | |
| 23. | Gloria Nelson | B/F | Yes | |
| 24. | Joyce Pittman | B/F | Yes | |
| 25. | Paul Dame | W/M | | B |
| 26. | Paulette Hutchins–Johnson | W/F | Yes | |
| 27. | Josephine Dumas | B/F | Yes | |
| 28. | Joyce Allen–Mills | B/F | Yes | |
| 29. | Charles Williams*** | B/M | | B,C |
| 30. | Douglas Stempson | W/M | | B,F |
| 31. | William Schroeder | W/M | | B |
| 32. | James George | W/M | | B |
| 33. | Angie Foster | B/F | Yes | |
| 34. | Steven Smith | W/M | | B |
| 35. | Robert Fulton | W/M | | B |

*
A — listed previously
B — no prima facie case
C — failed to exhaust remedies
D — untimely
F — no position listed

** W — White; B—Black; M—Male; F—Female
*** See supra note 8.

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 36. | Rodney Carter | W/M | | B |
| 37. | William Hill | B/M | | B |
| 38. | Warren Little | B/M | | B |
| 39. | Robert Lytle | B/M | | B |
| 40. | David Rapelyea | B/M | | B |
| 41. | Albersynia Quarles | B/F | | A |
| 42. | Matthew Mclean | B/M | | B |
| 43. | Bernard Lee | B/M | | B |
| 44. | Alfred Minor | B/M | | B |
| 45. | Jeanetta Wood | B/F | | A,C |
| 46. | Adrienne Poteat | B/F | | A,C,D |
| 47. | Patricia Britton | B/F | | A |
| 48. | Denise Shelton | B/F | | A |
| 49. | Barbara Hart | B/F | | A |
| 50. | Shelly Stubbs | B/F | | A |
| 51. | Hazel Smith | B/F | | A |
| 52. | Marian English | W/F | | A |
| 53. | Phillipia Riley | B/F | | A |
| 54. | Aloise Cromartie | B/F | | A |
| 55(1). | Jerry Moore | B/M | | B,C,D |
| 56(1). | George Taylor | B/M | | B,C,D |
| 55(2). | Luther Cary | B/M | | B |
| 56(2). | John Berry | B/M | | B |
| 57. | Leon Hudson | B/M | | B |
| 58. | Gerald Bowser | B/M | | B |
| 59. | Burnell Krause | W/M | | B |
| 60. | Joseph Murray | W/M | | B |
| 61. | Babara Marshall | B/F | Yes | |
| 62. | Babara Matthews | B/F | Yes | |
| 63. | Harold Nelson | B/M | | B |
| 64. | Daquda Lawrence | B/M | | B |
| 65. | Thomas Sescoe | B/M | | B |
| 66. | Betty Green | B/F | | C |
| 67. | Fred Staten | B/M | | B,C,D |
| | Total: | | 17 | |

```
* A — listed previously
 B — no prima facie case
 C — failed to exhaust remedies
 D — untimely
 F — no position listed

** W — White; B—Black; M—Male; F—Female
```

Appendix C–1

RACE DISCRIMINATION UNDER SECTION 1981
(as listed in Second Am.Compl. at 10–28)

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 1. | Robert O. Peed | W/M | | D |
| 2. | Arnold Golden | W/M | | D |
| 3. | Donald Baggot | W/M | | D |
| 4. | Donald Pullen | W/M | | D |
| 5. | James Spiker | W/M | | D |
| 6. | Dalciler Roberts | B/F | | B,D |
| 7. | Regina Gilmore | B/F | | B,D |
| 8. | Earthel Foster | B/F | | B,D |
| 9. | Joyce Jones | B/F | | B,D |

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 10. | Michelle Elzie | B/F | | B,D |
| 11. | Emma Mapp | B/F | | B,D |
| 12. | Jeanetta Wood | B/F | | B |
| 13. | Adrienne Poteat | B/F | | B,D |
| 14. | Patricia Britton | B/F | | B |
| 15. | Denise Shelton | B/F | | B |
| 16. | Barbara Hart | B/F | | B |
| 17. | Shelly Stubbs | B/F | | B |
| 18. | Hazel Smith | B/F | | B |
| 19. | Marian English | W/F | Yes | |
| 20. | Phillipia Riley | B/F | | B |
| 21. | Aloise Cromartie | B/F | | B |
| 22. | Albersynia Quarles | B/F | | B |
| 23. | Gloria Nelson | B/F | | B |
| 24. | Joyce Pittman | B/F | | B |
| 25. | Paul Dame | W/M | Yes | |
| 26. | Paulette Hutchins–Johnson | W/F | Yes | |
| 27. | Josephine Dumas | B/F | | B |
| 28. | Joyce Allen–Mills | B/F | | B |
| 29. | Charles Williams*** | B/M | | B |
| 30. | Douglas Stempson | W/M | | F |
| 31. | William Schroeder | W/M | Yes | |
| 32. | James George | W/M | Yes | |
| 33. | Angie Foster | B/F | | B |
| 34. | Steven Smith | W/M | Yes | |
| 35. | Robert Fulton | W/M | Yes | |

\* A — listed previously
 B — no prima facie case
 C — failed to exhaust remedies
 D — untimely
 F — no position listed

\*\* W — White; B—Black; M—Male; F—Female
\*\*\* See supra note 8.

## Appendix C–2

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 36. | Rodney Carter | W/M | Yes | |
| 37. | William Hill | B/M | | B |
| 38. | Warren Little | B/M | | B |
| 39. | Robert Lytle | B/M | | B |
| 40. | David Rapelyea | B/M | | B |
| 41. | Albersynia Quarles | B/F | | A,B |
| 42. | Matthew Mclean | B/M | | B |
| 43. | Bernard Lee | B/M | | B |
| 44. | Alfred Minor | B/M | | B |
| 45. | Jeanetta Wood | B/F | | A,B |
| 46. | Adrienne Poteat | B/F | | A,B,D |
| 47. | Patricia Britton | B/F | | A,B |
| 48. | Denise Shelton | B/F | | A,B |
| 49. | Barbara Hart | B/F | | A,B |
| 50. | Shelly Stubbs | B/F | | A,B |
| 51. | Hazel Smith | B/F | | A,B |
| 52. | Marian English | W/F | | A |
| 53. | Phillipia Riley | B/F | | A,B |
| 54. | Aloise Cromartie | B/F | | A,B |
| 55(1). | Jerry Moore | B/M | | B,D |
| 56(1). | George Taylor | B/M | | B,D |
| 55(2). | Luther Cary | B/M | | B |
| 56(2). | John Berry | B/M | | B |
| 57. | Leon Hudson | B/M | | B |
| 58. | Gerald Bowser | B/M | | B |
| 59. | Burnell Krause | W/M | Yes | |
| 60. | Joseph Murray | W/M | Yes | |

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 61. | Babara Marshall | B/F | | B |
| 62. | Babara Matthews | B/F | | B |
| 63. | Harold Nelson | B/M | | B |
| 64. | Daquda Lawrence | B/M | | B |
| 65. | Thomas Sescoe | B/M | | B |
| 66. | Betty Green | B/F | | B |
| 67. | Fred Staten | B/M | | B,D |
| | | | Total: 10 | |

```
* A — listed previously
 B — no prima facie case
 C — failed to exhaust remedies
 D — untimely
 F — no position listed

** W — White; B—Black; M—Male; F—Female
```

Appendix D–1

## REPRISAL DISCRIMINATION UNDER TITLE VII
(as listed in Second Am. Compl. at 10–28)

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 1. | Robert O. Peed | W/M | | C,D |
| 2. | Arnold Golden | W/M | | C,D |
| 3. | Donald Baggot | W/M | | C,D |
| 4. | Donald Pullen | W/M | | C,D |
| 5. | James Spiker | W/M | | C,D |
| 6. | Dalciler Roberts | B/F | | C,D |
| 7. | Regina Gilmore | B/F | | C,D |
| 8. | Earthel Foster | B/F | | C,D |
| 9. | Joyce Jones | B/F | | C,D |
| 10. | Michelle Elzie | B/F | | C,D |
| 11. | Emma Mapp | B/F | | C,D |
| 12. | Jeanetta Wood | B/F | | C |
| 13. | Adrienne Poteat | B/F | | C,D |
| 14. | Patricia Britton | B/F | Yes | |
| 15. | Denise Shelton | B/F | Yes | |
| 16. | Barbara Hart | B/F | Yes | |
| 17. | Shelly Stubbs | B/F | Yes | |
| 18. | Hazel Smith | B/F | Yes | |
| 19. | Marian English | W/F | Yes | |
| 20. | Phillipia Riley | B/F | Yes | |
| 21. | Aloise Cromartie | B/F | Yes | |
| 22. | Albersynia Quarles | B/F | Yes | |
| 23. | Gloria Nelson | B/F | Yes | |
| 24. | Joyce Pittman | B/F | Yes | |
| 25. | Paul Dame | W/M | Yes | |
| 26. | Paulette Hutchins–Johnson | W/F | Yes | |
| 27. | Josephine Dumas | B/F | Yes | |
| 28. | Joyce Allen–Mills | B/F | Yes | |
| 29. | Charles Williams*** | B/M | | C |
| 30. | Douglas Stempson | W/M | | F |
| 31. | William Schroeder | W/M | Yes | |
| 32. | James George | W/M | Yes | |
| 33. | Angie Foster | B/F | Yes | |

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 34. | Steven Smith | W/M | Yes | |
| 35. | Robert Fulton | W/M | Yes | . |

\*
| A | — listed previously |
|---|---|
| B | — no prima facie case |
| C | — failed to exhaust remedies |
| D | — untimely |
| F | — no position listed |

\*\* W — White; B—Black; M—Male; F—Female
\*\*\* See supra note 8.

## Appendix D–2

| | Selectee | Race/Gender** | Actionable | Dismissed* |
|---|---|---|---|---|
| 36. | Rodney Carter | W/M | Yes | |
| 37. | William Hill | B/M | Yes | |
| 38. | Warren Little | B/M | Yes | |
| 39. | Robert Lytle | B/M | Yes | |
| 40. | David Rapelyea | B/M | Yes | |
| 41. | Albersynia Quarles | B/F | | A |
| 42. | Matthew Mclean | B/M | Yes | |
| 43. | Bernard Lee | B/M | Yes | |
| 44. | Alfred Minor | B/M | Yes | |
| 45. | Jeanetta Wood | B/F | | A,C |
| 46. | Adrienne Poteat | B/F | | A,C,D |
| 47. | Patricia Britton | B/F | | A |
| 48. | Denise Shelton | B/F | | A |
| 49. | Barbara Hart | B/F | | A |
| 50. | Shelly Stubbs | B/F | | A |
| 51. | Hazel Smith | B/F | | A |
| 52. | Marian English | W/F | | A |
| 53. | Phillipia Riley | B/F | | A |
| 54. | Aloise Cromartie | B/F | | A |
| 55(1). | Jerry Moore | B/M | | C,D |
| 56(1). | George Taylor | B/M | | C,D |
| 55(2). | Luther Cary | B/M | Yes | |
| 56(2). | John Berry | B/M | Yes | |
| 57. | Leon Hudson | B/M | Yes | |
| 58. | Gerald Bowser | B/M | Yes | |
| 59. | Burnell Krause | W/M | Yes | |
| 60. | Joseph Murray | W/M | Yes | |
| 61. | Babara Marshall | B/F | Yes | |
| 62. | Babara Matthews | B/F | Yes | |
| 63. | Harold Nelson | B/M | Yes | |
| 64. | Daquda Lawrence | B/M | Yes | |
| 65. | Thomas Sescoe | B/M | Yes | |
| 66. | Betty Green | B/F | | C |
| 67. | Fred Staten | B/M | | C,D |
| | | Total: | 39 | |

\*
| A | — listed previously |
|---|---|
| B | — no prima facie case |
| C | — failed to exhaust remedies |
| D | — untimely |
| F | — no position listed |

\*\* W — White; B—Black; M—Male; F—Female