Bonita V. SCOTT, Plaintiff,

v.

Malcolm BALDRIDGE, Secretary of Commerce, Defendant.

Civ. A. No. 81–2385.

United States District Court, District of Columbia.

Jan. 12, 1984.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., U.S. Dist. Court, Washington, D.C., for defendant.

Robert L. Bell, Washington, D.C., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, Jr., Chief

### I. FINDINGS OF FACT

1. Plaintiff, Bonita V. Scott, is a Black female who is currently employed in the Minority Business Development Agency (MBDA), United States Department of Commerce. She is a GS–9 Program Specialist in the Capital Development Division, Office of the Deputy Associate Director for Market Development. She has held that position since 1978. She had previously served in the Capital Development Division in an unestablished position. Between April 1973 and June 1978 Scott worked in the Legal Staff and then in the Office of Chief Counsel. Her promotion to her current GS–9 grade was in 1974.

2. In this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Defendant, Malcolm Baldrige, is sued as the Secretary of the United States Department of Commerce. Plaintiff alleges that she was denied a promotion to grade GS–11 because of race and sex discrimination.

3. Scott worked under the supervision of James Marx, Chief of the Capital Development Division between July 1978 and February 1980. The position of Chief of the Capital Development Division was not filled after Mr. Marx vacated it in February 1980 until Lloyd Arrington assumed the position of Chief of the Capital Development Division in the summer of 1981.

4. As a result of a reorganization within the Minority Business Development Agen-cy, Philibert LaBonte became Deputy Associate Director for Market Development, a GS–15 position. He had four divisions under his supervision; the Industry and Trade Division, the Government Resources Division, the Capital Development Division and the Management Development Division. The position of Chief for each of these Divisions was vacant except for the Management Development Division in which Al Roma served as Chief.

5. Personnel in the Capital Development Division in 1980 included Lonnie Murray, Project Officer, GS–13; Plaintiff Scott; Diane Bush, Clerk-Stenographer, GS–4; and for a few months beginning in October, Edith Pack, Secretary, GS–7. Murray and Bush are Black employees; Pack is white.

6. LaBonte was supervised by the Associate Director, Policy and Management, Martha Mitchell. Mitchell was followed in the position of Associate Director by Clifford O. Young and then by Allen A. Stevenson. All are Black.

7. Under the direction of Martha Mitchell, LaBonte served as Acting Chief for the Capital Development Division, the Industry and Trade Development Division and the Governmental Resources Development Division during vacancies in those positions. Until Arrington assumed the position of Chief of the Capital Development Division in the summer of 1981, LaBonte was the Administrative Supervisor for employees in that Division including Plaintiff Scott.

8. During the period in which LaBonte was Acting Chief of the Capital Development Division, he did not recommend any employee for promotion.

9. The Capital Development Division had a heavy workload of projects in 1980 and was understaffed. Scott and Murray performed all of the professional work in the Division and divided the workload between themselves. They did what was necessary to get a particular project or work assignment done properly. Between themselves they dealt with all aspects of grant administration within the Division. They had a pleasant and harmonious working relationship. This relationship and their

joint skills and experience allowed them to produce the quantity and quality of work that satisfied LaBonte. Scott's abilities were readily accepted by Murray and LaBonte. Murray's assessment of Scott's performance is indicated by the performance evaluation he made of her at LaBonte's instruction. Murray also submitted a recommendation through LaBonte that Scott be promoted to the GS–1101–11 grade level based on an accretion of her duties and the high-quality of her performance. No action was taken on his recommendation.

10. Murray who had made recommendations concerning Scott's performance appraisal had never read her position description and was not familiar with the duties and responsibilities that were assigned to her by that position description. Labonte's familiarity with Scott's work was derived from the correspondence and written work products concerning the Capital Development Division which went through his office. He reviewed those documents and the authors as indicated in them. This was the basis for his assessment of Scott.

11. LaBonte had little personal contact with his Black employees. He had more personal contact with his white employees with whom he acted more at ease. This was perceived by the Black employees as treating them "differently." But this difference in treatment did not result in more favorable treatment of whites, nor conversely, less favorable treatment of Blacks. No whites were promoted by him. He reassigned Diane Bush, a Black, from a temporary position to a full time position. He had recommended Carolyn Pleasant, a Black, for a sustained superior performance award. He softened Mitchell's downgrade of Scott's performance evaluation.

12. LaBonte's failure to discuss with his employees the appropriate section of their performance evaluations in 1981 before submitting them to Personnel, although admittedly in violation of regulations does not give rise to an inference that a racial motive was involved. The performance evaluations of all employees were submitted tardily in the same fashion.

13. Scott's position was not in a career ladder. The only means for a noncompetitive promotion for a position outside a career ladder is through an accretion of duties. The decision to add duties to a position is discretionary with management. In 1981, at LaBonte's request, the Office of Personnel Operations conducted an audit of Scott's position to determine whether it was properly classified. The audit was performed and an analysis of the job audit concluded that the position was properly classified at the GS–9 grade level. LaBonte did not add duties to Scott's position nor did the Black supervisors who succeeded him. No racial animus was involved in Scott's failure to be promoted.

14. There is no evidence of sex discrimination in this record.

## CONCLUSIONS OF LAW

1. All of the jurisdictional prerequisites for the filing of this action have been satisfied. The Court has jurisdiction pursuant to 42 U.S.C. § 2000e–16 and the proceeding in this Court is *de novo*. *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

2. In cases of alleged unlawful disparate treatment under Title VII, courts employ a three-stage order of proof derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff has the initial burden of establishing a *prima facie* case of race or sex discrimination. If plaintiff meets this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the negative employment action suffered by plaintiff. If defendant articulates a legitimate, non-discriminatory reason, the burden returns to plaintiff to demonstrate that the reason offered by defendant is not the real reason but is a pretext for discrimination. Plaintiff has the ultimate burden of proving discrimination by a preponderance of the evidence.

3. The elements of a *prima facie* case of employment discrimination, whether it be race or sex, are not confined to an inflexible formula, but necessarily vary from case-to-case, depending upon the underlying factual situation. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In the context of an alleged discriminatory refusal to promote, the United States Court of Appeals for the District of Columbia Circuit has suggested that a Title VII plaintiff may establish a *prima facie* case by showing that: (1) she belongs to a protected group; (2) she was qualified for and applied for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected group were indeed promoted at the time plaintiff's request for promotion was denied. *Freeman v. Lewis,* 675 F.2d 398, 400 (D.C.Cir.1982).

4. Plaintiff Scott claims that officials at the Department of Commerce refused to promote her to a GS–11 level on account of her race and sex. Even assuming that Plaintiff made out a *prima facie* case of unlawful discrimination, the Court concludes that Defendant possessed and articulated sufficiently legitimate non-discriminatory reasons why Plaintiff was not promoted or recommended for promotion in 1980 or 1981. Because Plaintiff's position is not in a career ladder, the only means for a non-competitive promotion is through an accretion of duties. LaBonte, after examining Plaintiff's work performance, determined that additional duties should not be added to her position in order to increase the grade level. He based this determination on an examination of the documents she prepared. Similarly, Plaintiff's Black supervisors who succeeded LaBonte did not add duties to her position to enable her to increase her grade level. Finally, LaBonte's failure to discuss Plaintiff's performance appraisals with her prior to its submission to the personnel office did not adversely affect her promotion rights in that the only specific matter which LaBonte was obligated to discuss with her was the fact that she was rated satisfactory and in that the appraisal was available to Plaintiff and could have been amended, if appropriate, after its submission.

5. At this stage of the analysis, according to the Court in *Burdine:*

> [i]f the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity ... The plaintiff retains the burden of persuasion. [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the Court that she has been the victim of intentional discrimination.

*Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–93. Based on the foregoing findings, the Court concludes that the Plaintiff failed to demonstrate by a preponderance of the evidence that those reasons proffered by the Defendant were not in fact the true reasons for the personnel decisions in question. Accordingly, the Court finds that judgment must, therefore, be entered for the Defendant and this case is dismissed.