**Peggy CHILDERS, Plaintiff,**

v.

**Rodney SLATER, Secretary of Transportation, Defendant.**

**No. Civ.A. 97–853(RMU).**

United States District Court, District of Columbia.

March 23, 1999.

---

**MEMORANDUM OPINION**

URBINA, District Judge.

**Granting in Part and Denying in Part the Defendant's Motion for Summary Judgment**

## I. INTRODUCTION

This matter comes before the court upon the defendant's motion for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. The plaintiff, Peggy Childers, is an African–American female who, at the time she filed this complaint, was an employee of the United States Department of Transportation. She brings this *pro se* action alleging race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (1994). The defendant is Rodney Slater, the Secretary of Transportation, named in his official capacity as head of the Federal Aviation Administration ("FAA"), an agency within the United States Department of Transportation.

In her complaint, the plaintiff brings in excess of twenty-six claims,[1] which are best summarized as follows: (1) discriminatory and/or retaliatory failure to promote;[2] (2) discriminatory and/or retaliatory reassignment;[3] (3) discriminatory and/or retaliatory performance appraisal;[4] (4) discriminatory discipline and/or discipline in reprisal;[5] and (5) other claims which essentially constitute discriminatory and/or retaliatory harassment.[6] Upon consideration of the parties' submissions, the applicable law and the record herein, the court concludes that the plaintiff has failed to exhaust her administrative remedies with respect to the allegations made in paragraphs 6(e), (i), (m), (n), (p) in part, and (u) of the complaint. The court con-

Peggy Childers, Baltimore, MD, pro se.

Suzanne Claire Nyland, Jerri Ulrica Dunston, Mary Lou Leary, U.S. Attorney's Office, Washington, DC, for Rodney Slater, Secretary of Transportation, federal defendant.

1. In a prior Order, dated June 12, 1998, this court dismissed the claims alleged in paragraphs 6(y) and (z) of the complaint.

2. (*See* Compl. ¶¶ 6(p) and (w).)

3. (*See* Compl. ¶ 6(k).)

4. (*See* Compl. ¶¶ 6(*l*), (o) and (s).)

5. (*See* Compl. ¶¶ 6(b), (c), (g), (i) and (n).)

6. (*See* Compl. ¶¶ 6(a), (d), (e), (f), (h), (j), (m), (o), (p), (q), (r), (t), (u), (v) and (x).)

cludes that the plaintiff has failed to establish a prima facie case of discrimination or retaliation and/or failed to carry her burden of proving that the employer's proffered reasons for its actions were pretextual with respect to the allegations made in paragraphs 6(a), (b), (c), (d), (f), (g) in part, (h), (j), (k), (*l*), (o), (p) in part, (s), (w) in part, and (x) of the complaint. The court further concludes that there are genuine issues of material fact in dispute regarding the allegations of reprisal made in paragraphs 6(g) and (p) of the complaint, and the allegations regarding failure to reassign to a GS–334 position made in paragraph 6(w) of the complaint. Finally, the court concludes that the plaintiff has failed to state a claim of hostile work environment in paragraphs 6(q), (r), (t) and (v) of the complaint. Accordingly, the court will grant in part and deny in part the defendant's motion for summary judgment.

## II. BACKGROUND

The plaintiff is an African–American female who, in July 1992, was employed by the defendant as a Communications Management Specialist at the "GS 391–12/13/14" level in ASM–310, a branch supervised by Frank Corpening. The plaintiff filed her complaint in this action on April 25, 1997, after timely filing her EEOC charge and receiving her letter to sue on January 27, 1997. The complaint alleges several discriminatory and/or retaliatory incidents, which began in October 1992 and continued through January 1994.

The relevant facts are as follows. In October and November 1992, the plaintiff was denied permission to travel to international destinations in France and Portugal on work related matters because of an ostensible lack of travel funds. (Compl.¶ 6(a).) Endeavoring to avoid future resistance to her participation in international travel, the plaintiff, at the direction of her second line supervisor at ASM–310, Dave Tuttle, developed an Individual Development Plan ("IDP"). (Compl.¶¶ (b), (c); Decl. of Dave Tuttle

¶ 3.) The IDP was thereupon denied funding. (Compl.¶ 6(c).) In January 1993, the plaintiff was involved in a confrontation with co-workers in the accounting department of her division. Her supervisor subsequently received written accounts detailing workplace incidents involving the plaintiff and her co-workers. Shortly thereafter, the plaintiff was placed on a performance improvement plan ("PIP") by Corpening. (Compl.¶ 6(g).) During the time that the PIP was imposed, the plaintiff was reassigned to serve as the FAA Leased International Telecommunications ("FLINT") Project Lead. Consequently, in March 1993, the plaintiff filed a formal complaint of discrimination with the FAA Office of Civil Rights. (Def.'s Mot. for Summ.J., Ex. 2, Admin.Compl. 93–0132.)

The plaintiff was detailed out of ASM–310 and placed in the National Maintenance Coordination Center ("NMCC") in August 1993. Her supervisor at the NMCC was initially Frank DeMarco, followed in February 1994 by David Lantzy. During her tenure at the NMCC, the plaintiff applied for and was denied a permanent reassignment. Also during her tenure at the NMCC, the plaintiff interacted with Jim Wilkins, a co-worker who she alleges harassed her. The plaintiff filed subsequent administrative complaints in March and April 1994. (Def.'s Mot. for Summ.J., Ex. 4, Admin.Compl. 94–0290; Decl. of Harold LeBlanc and Attached Ex.) At the termination of the plaintiff's NMCC detail in April 1994, the plaintiff was detailed to ATM–520, where her supervisor was Gilbert Armbruster. The plaintiff remained at ATM–520 for approximately one year before returning to the supervision of Frank Corpening in April 1995.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). A genuine issue is one that could change the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court is mindful of its duty to construe pleadings liberally where, as here, the nonmoving party is proceeding *pro se. See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). But if such party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial," then summary judgment must be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

The D.C. Circuit has held that because proof of discrimination is difficult for a plaintiff to establish, the court should view summary judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C.Cir. 1997); *Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 18 (D.D.C.1993). Nonetheless, the nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (internal citations omitted). To survive a motion for summary judgment in a discrimination case, a plaintiff cannot rest on mere allegations of pretext. *See Hayes v. Shalala*, 902 F.Supp. 259, 263 (D.D.C.1995); *Johnson*, 836 F.Supp. at 15. By pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## B. Allocation of Burdens and Order of Proof Under Title VII

The Supreme Court has set forth a three step analysis to allocate the burden of proof in a Title VII case alleging discriminatory treatment and retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1978); *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C.Cir.1997). The plaintiff must first establish, by a preponderance of the evidence, a prima facie case of race or sex discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Second, if the plaintiff succeeds in presenting a prima facie case, the burden of proof shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's treatment. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Third, should the defendant meet this burden, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but rather a pretext for discrimination and retaliation. *Id.*

The burden allocation and order of proof applied in discrimination cases is similarly applied to claims of reprisal under Title VII. *See Webb v. District of Columbia*, 864 F.Supp. 175, 185 (D.D.C.1994). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* Should the defendant meet its burden, the plaintiff must prove that the employer's proffered reasons are a pretext for discrimination. *Id.* The D.C. Circuit has additionally held that "in most situations, the employer is permitted one last defense: by clear and convincing evidence, the defendant must prove that

plaintiff would have been subjected to the adverse action anyway, even absent retaliation." *See, e.g., Chen v. General Accounting Office,* 821 F.2d 732, 738 (D.C.Cir. 1987); *Williams v. Boorstin,* 663 F.2d 109, 116 (D.C.Cir.1980).

As a threshold matter, the defendant argues for summary disposition of sundry claims based on the plaintiff's failure to exhaust her administrative remedies. Thus, before reaching the substantive merits of the defendant's motion for summary judgment, the court will determine whether the plaintiff's claims are properly before it.

### C. Exhaustion of Administrative Remedies

■ The court will examine the claims for administrative exhaustion roughly in the order in which the claims are disputed in the defendant's motion for summary judgment. The defendant argues that the plaintiff's allegations regarding the FAA's failure to promote her in 1994, 1995 and 1996, embodied at paragraph 6(p) of the complaint, are untimely. The defendant seeks to have these claims dismissed for failure of the plaintiff to exhaust her administrative remedies.

■ Before bringing suit in federal court, Title VII plaintiffs must exhaust their administrative remedies by filing an EEOC charge and allowing their employers an opportunity to act on the charge. *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995). Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action can that person herself bring an action in federal court. *See id.;* 42 U.S.C. § 2000e–5(f)(1). The doctrine of administrative exhaustion provides that a Title VII lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park,* 71 F.3d at 907 (citing *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.

1994)) (citations and internal quotations omitted). This circuit has stressed that "adequacy of notice is the core of Title VII administrative exhaustion requirements." *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir. 1985). Accordingly, courts have adduced that so long as the employer was accorded notice that its actions allegedly violated Title VII and was afforded adequate opportunity to pursue a mutually satisfactory resolution with the employee, the claims before the court might survive an inquiry into administrative exhaustion. *See Webb,* 864 F.Supp. at 184; *Loe v. Heckler,* 768 F.2d 409, 420 (D.C.Cir.1985).

■ The plaintiff maintains that Corpening's failure to promote her in March 1993 was a determinative and motivating reason for her filing of EEOC charges. (Decl. of Harold LeBlanc and Attached Ex.) Accordingly, she argues that the defendant should have been on notice to investigate every year following 1993 in which she was not promoted by Corpening. The plaintiff admits, however, that any additional claims which arose during the complaint process would have merited a new administrative complaint being filed, and the plaintiff did not file new complaints alleging that Corpening failed to promote her after 1993. (Def.'s Mot. for Summ.J. at 11, 14–16; Def.'s Mot. for Summ.J., Ex. 3J, Childers's Deposition ("Childers's Depo.").) "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park,* 71 F.3d at 907 (internal citations and quotations omitted). The court concludes that the plaintiff's claim of non-promotion in 1993 did not fairly embrace future, discrete incidents of non-promotion in subsequent years such that the defendant should have been on notice to investigate and act on the plaintiff's additional claims of non-promotion. *See Park,* 71 F.3d at 907. Thus, the plaintiff failed to timely allege and administratively exhaust her remedies with respect to the allegations of discrimination and reprisal in paragraph

6(p) of the complaint insofar as they embody the failure to promote the plaintiff after 1993. Accordingly, the defendant's motion for summary judgment will be granted with respect to claims alleging non-promotion in 1994, 1995 and/or 1996.

■ Next the defendant argues, with respect to paragraph 6(*l*), that plaintiff did not timely raise a claim of discriminatory performance appraisal within 45 days of receiving the March 1993 appraisal as required by 29 C.F.R. § 1614.105. (Def.'s Mot. for Summ.J. at 23; Decl. of Harold LeBlanc ¶ 7.) A review of the EEO Counselor's Report covering the period from February 23 through April 9, 1993, however, suggests that the March 1993 performance appraisal claim was fairly embraced by the issues raised therein. (Decl. of Harold LeBlanc, Ex. 2.) In this period, the plaintiff alleged that she was "(1) continually subjected to a different set of standards for ... performance of other elements of her job as indicated in the organizational chart." (*Id.*) Furthermore, the report recounts that a meeting took place on March 23, 1993, wherein the plaintiff wanted to discuss "(1) having [her] personnel record cleared" and "(2) Performance Improvement Plan dropped." (*Id.*) The report's reference to plaintiff's continual subjugation to disparate performance standards coupled with the articulation of a PIP grievance brings the March 1993 performance appraisal claim within the ambit of the administrative inquiry. Thus, paragraph 6(*l*) is properly before the court.

■ The defendant also seeks judgment on the basis of administrative exhaustion with respect to paragraph 6(a) for the plaintiff's failure to allege "Ms. Bauerlein" as the discriminating official in her administrative complaints. Courts have held that "[o]rdinarily, a party not named in an EEOC charge may not be sued under Title VII." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989). However, "every detail of the eventual complaint need not be presaged in the EEOC filing." *Park*, 71 F.3d at 907. The detail and specificity of the report filed in Ms. Childers's EEOC report demonstrates that the defendant was accorded ample notice of the charges and parties implicated and was given proper opportunity for conciliation. (Decl. of Harold LeBlanc, Ex. 1.) The court concludes, therefore, that the plaintiff's claim in paragraph 6(a) is properly before the court.

■ Defendant further contends that the claims in paragraphs 6(e), (i), (m), (n), and (u), and the allegations of misrepresented supervision in paragraph 6(p), were never administratively exhausted.[7] The court concludes, after careful scrutiny of the entire record, with particular attention to the administrative record, including the exhibits attached to the Affidavit of Harold LeBlanc, the EEOC counselors' reports, administrative complaints, the formal complaint before this court, as well as Volumes I and II of the exhibits attached to the plaintiff's amended motion in opposition to the defendant's motion for summary judgment ("Amended Opposition"), that the aforementioned claims were never timely raised with an EEOC counselor insofar as they relate to discriminatory treatment or reprisal.[8] While the court has held that

---

7. Paragraph 6(e) alleges that the plaintiff was denied travel reimbursement in January 1993. Paragraph 6(i) alleges that the plaintiff was placed on leave restriction in July 1993 and denied an alternative working schedule in July 1993. Paragraph 6(m) alleges that Corpening spread unfavorable comments about the plaintiff. Paragraph 6(n) alleges that the plaintiff was threatened in August 1993 that her leave restriction would follow her to any subsequent detail assignment. Paragraph 6(u) alleges that Corpening accused the plaintiff of wasting money on the FLINT project. Paragraph 6(p) alleges that Corpening misrepresented the level of supervision accorded the plaintiff.

8. The court notes that the "continuing violation" doctrine is generally applied to excuse the failure to exhaust administrative remedies for a series of related acts that occurred before a timely presented claim. *Johnson v. Albright*, 992 F.Supp. 37, 39 (D.D.C.1998).

claims of retaliation may be raised for the first time in federal court where the claimant · has filed· an earlier administrative claim of reprisal and alleges further retaliation as a result, *see Johnson,* 992 F.Supp. at 39, the court concludes that none of the aforementioned claims was ever raised as an administrative claim of reprisal with an EEO counselor or other administrative authority. Thus, the foregoing claims can not be raised for the first time before this court as claims of retaliation. Accordingly the defendant's motion for summary judgment will be granted with respect to all allegations of race and/or sex-based · discrimination and/or reprisal in paragraphs 6(e), (i), (m), (n), (p)[9] and (u) of the complaint.

Having considered the defendant's threshold questions regarding jurisdiction over the plaintiff's claims, the court turns to consider the parties remaining arguments regarding race and sex discrimination, retaliation and multifarious harassments.

## D. The Prima Facie Case of Discrimination and Retaliation

Although *McDonnell–Douglass* set forth the requisite. elements for a plaintiff to establish a prima facie case in the hiring context specifically, the Supreme Court has stressed that elements of a prima facie case are flexible and must be adapted to the particular facts of the case at hand. *See Burdine,* 450 U.S. at 253, 101 S.Ct.

However, in order to rescue claims for which an administrative complaint was not timely filed, the plaintiff must properly allege the continuing violation theory in both the administrative complaint and the formal complaint before the court. *See Albritton,* 944 F.Supp. at 971 (internal citations omitted); *Caliendo v. Bentsen,* 881 F.Supp. 44, 47 (D.D.C.1995). Nowhere in the formal complaint does the plaintiff identify or allege the continuing violation theory as a cause of action.

Assuming, however, that the plaintiff had properly alleged the theory, the allegations here do not involve the same types of reprisal, are more in the nature of isolated incidents, and are determinative decisions which would

1089; *Batson v. Powell,* 912 F.Supp. 565, 573 (D.D.C.1996); *Scott v. Baldridge,* 609 F.Supp. 330, 333 (D.D.C.1984).

■, In light of the Supreme Court's directive, the D.C. Circuit has determined generally that to establish a prima facie case of race or sex discrimination under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) she was a member of a protected group; (2) an adverse employment action took place; and (3) she and a similarly situated non-protected person received dissimilar treatment. *See, e.g., McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Douglas v. Pierce,* 707 F.Supp. 567 (D.D.C.1988); *Scott,* 609 F.Supp. at 333.

■ In claims of reprisal or retaliation under Title VII, the plaintiff must establish a prima facie case by demonstrating (1) that she engaged in a statutorily protected activity (2) that the employer took an adverse employment action and (3) that a causal connection existed between the two. *See Webb v. District of Columbia,* 864 F.Supp. 175, 185 (D.D.C.1994); *Batson,* 912 F.Supp. at 576; *Dunning v. National Aeronautics and Space Admin.,* 718 F.2d 1170, 1174 (D.C.Cir.1983). The causal connection component of the prima facie case may be established by showing that the employer knew about the plaintiff's participation in a protected activity and

have alerted the plaintiff to the need to engage the administrative process. These allegations, therefore, do not suffice to allege a continuing violation. Furthermore, this court counsels, "the theory of continuing violation must be guardedly employed because within it are the seeds of the destruction of statutes of limitations in Title VII cases." *Cones v. Shalala,* 945 F.Supp. 342, 346 (D.D.C.1996). · To conveniently cast all the allegations in this complaint as a related series of discriminatory or retaliatory actions would permit this plaintiff to bypass the Title VII administrative process.

9. Insofar as paragraph 6(p) of the complaint alleges misrepresentation of supervision.

the adverse action took place shortly thereafter. *See Mitchell*, 759 F.2d at 86.

The plaintiff has established for all purposes of this motion that she is a member of both protected groups at issue; she is African–American and female. She has also established that her filing of EEO complaints constitutes participation in the EEOC process, for which Title VII protects against reprisal. *See* 42 U.S.C.A. § 2000e–3(a). However, the plaintiff has failed with respect to the allegations in paragraphs 6(d), (f), (h), (k), (j), (*l.*) and (x) of the complaint to establish the second element of the prima facie case of discrimination or retaliation, that is, that she suffered an adverse employment action.

1. **The plaintiff has failed to establish adverse employment action as a matter of law.**

Although this court has not precisely defined what constitutes adverse action under Title VII disparate treatment cases, it has noted that "courts applying Title VII have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting, and compensating ... [and not] interlocutory or mediate decisions having no immediate effect upon employment decisions." *Rowland v. Riley*, 5 F.Supp.2d 1, 3 (D.D.C.1998); *See Taylor v. Federal Deposit Insurance Corp.*, 132 F.3d 753, 764 (D.C.Cir.1997); *Mungin*, 116 F.3d at 1554. Where disparate treatment under Title VII is alleged, this court has further held that for an employment decision to rise to the level of adverse action there must be a tangible change in the duties or working conditions constituting a material employment disadvantage. *See Jones v. Billington*, 12 F.Supp.2d 1, 14 (D.D.C.1997).

With respect to what conduct constitutes adverse action in the context of allegations of reprisal, this court has stated that different employer actions can be viewed as retaliatory treatment, including harassment, disciplinary demotion, suspensions with pay, unjustified evaluations and reports, loss of normal work assignments, denials of letters of commendation, statements to prospective employers and termination. *See Batson*, 912 F.Supp. at 576. However, the actions must engender some negative consequences with respect to the plaintiff's employment. *See Brown v. Bentsen*, 921 F.Supp. 1, 2 (D.D.C.1995).

 Perhaps recognizing that Title VII can be used in a misguided attempt to resolve what are essentially problems attributable to insensitive personnel management and not to discrimination, this court has noted that conduct that sporadically wounds or offends but does not hinder an employee's performance does not rise to the level of adverse action. *See Batson*, 912 F.Supp. at 579; *Nance v. Librarian of Congress*, 661 F.Supp. 794, 798 (D.D.C. 1987); *see also Henry v. Guest Services*, 902 F.Supp. 245, 252 n. 9 (D.D.C.1995). Importantly, not everything that makes an employee unhappy will constitute actionable adverse action. *Jones*, 12 F.Supp.2d at 13. Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action. *Jones*, 12 F.Supp.2d at 14. Moreover, "[m]arginal distinctions with uncertain consequences are not adverse actions for the purposes of Title VII." *Milburn v. West*, 854 F.Supp. 1, 14 (D.D.C.1994).

 The court will now examine the plaintiff's claims in light of the foregoing standards. First, paragraph 6(d) of the complaint alleges that the plaintiff was falsely charged with entering into an illegal contract and falsely accused of failing to utilize training and certification that she had not received.[10] In support of this allegation, the plaintiff produced a memorandum cautioning her against improper, albeit inadvertent, procurement

---

10. While the plaintiff and the defendant dispute whether the plaintiff was charged with "illegal" or "improper" conduct, such characterization is immaterial in establishing the plaintiff's prima facie burden.

action. (Pl.'s. Rebuttal to the Decl. of Frank Corpening, Ex. 57–E1 ("Corpening Rebuttal").) The record establishes that Corpening was acting in conformity with and pursuant to an agency objective to correct a prevalent problem generally with employee oversight in procurement procedure. (*See id.,* Letter from Deputy Director dated Sept. 1992.) Plaintiff conceded that "to her embarrassment" she did not follow government procedure. (Corpening Rebuttal, Ex. 57–E2.) The court concludes that the defendant was warranted in reprimanding the plaintiff for her error. A reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action. *See, e.g., Milburn,* 854 F.Supp. at 14 (holding formally memorialized incident report that resulted in no disciplinary action or other demonstrably adverse employment action did not constitute adverse action); *Leisen v. City of Shelbyville,* 968 F.Supp. 409, 409 (S.D.Ind.1997). Accordingly, the plaintiff has failed to make a prima facie case of discrimination or retaliation, and judgment will be granted for the defendant with respect to paragraph 6(d) of the complaint.

■ The plaintiff alleges in paragraph 6(*l*) of the complaint that she was denied a performance appraisal based on evenhanded summary evaluation criteria, resulting in a discriminatory evaluation of "fully successful" in March 1993. This court has held that the fact that a plaintiff receives ·a lower performance evaluation than she thought she deserved does not constitute adverse action sufficient to make a prima facie case of discrimination and reprisal. *See, e.g., Brown,* 921 F.Supp. at 2; *see also Johnson v. City of Fort Wayne,* 91 F.3d 922 (7th Cir.1996) (holding that negative employment evaluations did not constitute adverse employment action); *Smart v. Ball State Univ.,* 89 F.3d 437, 442 (7th Cir.1996) (holding that negative performance ratings alone were insufficient to constitute adverse actions); *Jones,* 12 F.Supp.2d at 14. Therefore, plaintiff has not satisfied her prima facie burden, and summary judgment will be granted with respect to paragraph 6(*l*) of the complaint.

■ The plaintiff alleges in paragraphs 6(f) and 6(j) of the complaint that she was subjected to discrimination and retaliation when her supervisor(s) and/or co-worker(s) communicated disparaging, false and unfavorable comments to other supervisors and/or employees. Plaintiff alleges further, in paragraph 6(x), that Corpening told her she would have to be observed working at a GS–13 grade level before being promoted. This court has held that for verbal "comments to rise to the level of adverse employment action, the conduct must be so egregious as to alter the conditions of employment." *Henry,* 902 F.Supp. at 252 (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)) (internal quotations omitted). Any ·of the foregoing comments may be said to evince insensitivity toward the plaintiff, or indeed to be indicative of mismanagement generally, but none of the comments are sex or race based or so egregious as to rise to the level of an adverse action. In sum, the plaintiff has failed to demonstrate how her employment status was affected by any of the foregoing actions. · The D.C. Circuit has stated, "federal courts cannot be ·wheeled into action for every workplace slight." *Taylor,* 132 F.3d at 764. With respect to the allegations in paragraphs 6(f), (j) and (x), such comments are the quintessence of words that wound but have no affect on employment matters. Consequently, the plaintiff has not established a prima facie case of discrimination or reprisal. Thus, the defendant's motion is granted as to paragraphs 6(f), (j) and (x) of the complaint.

■ The plaintiff alleges in paragraph 6(h) of the complaint that she was falsely accused of failing to attend a course in violation of the terms of her PIP. False accusations without negative employment consequences are not employment decisions actionable under Title VII. *See e.g.,*

*Rowland,* 5 F.Supp.2d at 3; *McGarity v. Mary Kay Cosmetics,* 1998 WL 50460, *2 (N.D.Tex. Jan.20, 1998). The plaintiff does not present sufficient evidence to support an inference that the accusation inspired any negative employment consequences, save a sojourn through the rumor mill. Therefore, the plaintiff has not established a prima facie case of discrimination or retaliation, and summary judgment will be granted with respect to paragraph 6(h) of the complaint.

 In paragraph 6(k) of the complaint, the plaintiff alleges that she was discriminatorily removed and reassigned from her position as an international program manager on March 30, 1993. Courts have held that reassignment within a division, without demotion or corresponding reduction in salary or benefits does not constitute adverse action. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994) *Flaherty v. Gas Research Inst.* 31 F.3d 451, 457 (7th Cir. 1994). The plaintiff does not offer any evidence to suggest that her reassignment from an international program manager to the project leader of FLINT had any corresponding negative effect on her salary, benefits, responsibilities, stature or otherwise. Thus, she has not established that the reassignment constituted an adverse action. Accordingly, the defendant's motion for summary judgment will be granted with respect to paragraph 6(k) of the complaint.

To reiterate the court's conclusions thus far, the defendant's motion for summary judgment for failure to state a prima facie case will be granted with respect to paragraphs (d), (f), (h), (j), (k), (*l*) and (x) of the complaint, specifically for the plaintiff's failure to allege adverse action as a matter of law. The remainder of the plaintiff's claims alleging adverse action present novel questions that this circuit has not specifically decided. *See, e.g., Taylor,* 132 F.3d at 764; *Mungin,* 116 F.3d at 1554. Therefore, construing the pleadings in a light most favorable to the *pro se* plaintiff, the court assumes that the novel allegations that follow constitute adverse actions as a matter of law. Thus, the ensuing discussion presumes that the plaintiff has established her prima facie case, and turns instead to consider whether the defendant has articulated legitimate, non-discriminatory reasons for his actions and whether the plaintiff has met her burden of establishing a pretext.

### 2. The plaintiff has failed to establish a pretext for discrimination or reprisal.

With respect to the plaintiff's burden of establishing pretext, this court has held that evidence of pretext that is merely colorable or not significantly probative does not suffice to withstand summary judgment. *See Hayes v. Shalala,* 902 F.Supp. 259, 263 (D.D.C.1995); *Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993). Mindful of the foregoing standard, the plaintiff's claims are addressed in the order in which they are alleged in her complaint.

 The plaintiff alleges in paragraph 6(a) of the complaint that she was denied the opportunity to travel and thereby denied requisite training for the performance of her official program manager duties.[11] The defendant articulated budgetary constraints as the legitimate nondiscriminatory reason for denying the plaintiff travel opportunities.[12] (Decl. of Dave Tuttle ¶ 1;

---

11. The court assumes for purposes of this motion that denial of travel opportunity is an adverse action where travel is a material aspect of training requisite for job performance. The court notes, however, that the plaintiff did not provide any evidence to prove that travel opportunities were a part of her posi-

tion description, or otherwise necessary for her performance of official duties as an international program manager.

12. The defendant also argued and the plaintiff admitted that she developed a sinus problem and called in sick just days before the expect-

Decl. of Frank Corpening ¶ 52.) The plaintiff attempts to demonstrate a pretext by merely alleging that seventeen white men, three from the plaintiff's own branch, were authorized to travel. (Compl. ¶ 6(a).) The defendant proffered, and the plaintiff did not dispute, evidence that two of those white males, Peter Casegas and Dale Livingston, were stricken from the same delegation to which the plaintiff refers, and that other non-protected employees have been stricken from delegations in the past. (Decl. of Frank Corpening ¶ 52.) The plaintiff's mere assertion of a pretext does not suffice to withstand the defendant's motion. *See Hayes*, 902 F.Supp. at 263; *Johnson*, 836 F.Supp. at 18. Thus, the defendant will be granted summary judgment with respect to paragraph 6(a) of the complaint.

 The plaintiff alleges in paragraphs 6(b) and (c) of the complaint that she was directed to develop an IDP and thereupon was denied appropriation of funds to implement the plan. (Compl. ¶¶ (b), (c); Decl. of Dave Tuttle ¶ 3; *see* IDP at Amended Opp'n, Ex. 55–A.) Assuming that the denial of funding for the plaintiff's IDP did constitute an adverse action, the defendant articulates as its legitimate nondiscriminatory reason that the prohibitive cost of funding the plaintiff's IDP, which included a request for training in Singapore, was the reason the plaintiff's IDP was denied funding. (Def.'s Mot. for Summ.J. at 32; Decl. of Dave Tuttle ¶ 6.) To avoid summary judgment, the plaintiff is "required to produce some objective evidence showing defendant's proffered reasons are mere pretext." *Batson*, 912 F.Supp. at 578. The plaintiff's lone conclusory assertion that the IDPs of other employees "were for the most part funded," without any show of objective evidence in support of this assertion, does not in and of itself suffice to establish that the defendant's reasons for denying her funding are a pretext. Thus, the defendant's motion for summary judgment will be granted

ed departure for Paris. (Pl.'s Rebuttal to the

with respect to paragraphs 6(b) and (c) of the complaint.

 The plaintiff alleges in paragraphs 6(*o*) and (s) of the complaint that she was denied performance feedback generally, from May 1993 through January 1995, resulting in no evaluation at all in March 1994, and no appraisals during the tenure of her detail assignment to the NMCC between August 1993 and January 1995. The plaintiff claims that this conduct adversely affected her promotion potential. The plaintiff does not, however, dispute the legitimate nondiscriminatory reason advanced by the defendant, namely, that Corpening was not required to give the plaintiff any informal feedback in the form of promotion criteria. (Def.'s Mot. for Summ.J. at 17.) The plaintiff concedes that her detail supervisors, and not Corpening, were responsible for her evaluations during her detail to the NMCC. (Def.'s Mot. for Summ.J. at 25; Childers's Depo., Ex. 3D, 3M.)

[23] Relatedly, the plaintiff concludes that she was the only employee at her detail who was ever made to perform random duties for which no position description or evaluation criteria existed. The record establishes that there was a reorganization under way during the plaintiff's tenure at the NMCC. The plaintiff does not dispute the defendant's assertion that no detailee at the NMCC received performance standards during this period or, alternatively, that no performance standards were in place at the NMCC during the plaintiff's tenure there. (Def's Mot. for Summ.J. at 40–41; Second Decl. of Dave Lantzy ¶ 5.) When an employer's departure from a prescribed procedure has become the norm, the departure lends no support at all to the plaintiff's inference that the employer's departure from established procedure is a pretext. *See Shelborne v. Runyon*, 1997 WL 527352 * 12 (D.D.C.) (citing cases). Nor does the plaintiff dispute the defendant's contention

Decl. of Frank Corpening ¶ 51.)

that Armbruster neglected to put standards in place because he did not anticipate that the plaintiff's detail would last more than 120 days, that Armbruster did provide the plaintiff with performance standards in November 1994, and that Armbruster rated the plaintiff "fully successful" in 1995. (Pl.'s Rebuttal to the Decl. of Armbruster, Ex. 1; Def 's Rep. Mem. at 22.) Thus, the plaintiff has not established that the defendant's proffered reasons for denying her performance standards and feedback during the period from August 1993 through January 1995 are a pretext for discrimination or reprisal. Accordingly, the defendant's motion for summary judgment will be granted with respect to the allegations in paragraphs 6(*o*) and (s) of the complaint.

In sum, viewing the evidence most favorably for the plaintiff, the court concludes that the plaintiff has not met her burden of establishing a pretext with respect to the defendant's legitimate, nondiscriminatory reasons in paragraphs 6(a), (b), (c), (*o*) and (s) of the complaint. At this juncture, the court turns to consider the plaintiff's remaining claims alleging discriminatory and/or retaliatory discipline, non-promotion and failure to reassign.

### 3. The plaintiff has established a prima facie case and created an inference of pretext with respect to her claims of retaliatory placement on a PIP.

With respect to allegations of discriminatory and retaliatory discipline, the plaintiff alleges in paragraph 6(g) of the complaint that she was placed on a PIP by Corpening on February 8, 1993, in reprisal for filing an EEO complaint in December 1992. The submissions characterize the PIP as a disciplinary measure. (Def 's Mot. for Summ.J. at 26; Def.'s Rep.Mem. at 1.) The court finds that the imposition of a PIP in this instance constitutes an adverse action and is analogous to cases involving the administration of disciplinary

action. Thus, the plaintiff must also prove as part of her prima facie case that employees outside of her protected group were not punished in a similar fashion. *See Batson,* 912 F.Supp. at 573.

The plaintiff undermines her claim of race and sex based discrimination because she introduced evidence that a white male working as an international program manager was charged with similar performance deficiencies and placed on a six-month PIP. (Pl.'s Amended Opp'n at 9–10; Pl.'s Rebuttal to the Decl. of Frank Corpening ¶ 7.) Thus, the plaintiff has not established that employees outside of her protected group were accorded more favorable treatment, and she has not established her prima facie case that the PIP was imposed as an adverse disciplinary measure. Accordingly, the defendant's motion for summary judgment will be granted insofar as paragraph 6(g) of the complaint contains allegations of sex- or race-based discrimination.

Notwithstanding the plaintiff's failure to state a prima facie case of discriminatory imposition of a PIP, the plaintiff does establish a prima facie case of retaliation in paragraph 6(g) of the complaint. This initial burden is not great, and Ms. Childers merely needs to establish facts adequate to permit an inference of retaliatory motive. *McKenna,* 729 F.2d at 790. Importantly, the court notes that a retaliation claim is independent of any underlying discrimination claim in that an employee may bring a retaliation suit even if the underlying discrimination claim is unsuccessful. *See, e.g., Downey v. Isaac,* 622 F.Supp. 1125, 1132 (D.D.C.1985); *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986); *Kellner v. General Refractories Co.,* 631 F.Supp. 939 (N.D.Ind.1986). *But see Jurado v. Eleven–Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir.1987) (stating that there must be a reasonable belief that the underlying claim was valid).

The plaintiff was placed on a PIP on February 8, 1993, shortly after her initiation of an EEOC complaint in December 1992. The causal connection necessary for a prima facie case of reprisal may be established by showing that the adverse action occurred shortly after the employer knew about the plaintiff's participation in protected activity. *See Mitchell,* 759 F.2d at 86. Viewed most favorably for the plaintiff, the record in this case suggests that Corpening likely had actual or constructive knowledge of the plaintiff's participation in the EEOC process. *See Jones,* 12 F.Supp.2d at 14. Thus, the court concludes that the plaintiff has established a prima facie case that the PIP was imposed in reprisal for her participation in protected activity.

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. The plaintiff is entitled to survive summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of the defendant's proffered reasons for its challenged action. *Aka,* 116 F.3d at 884. The defendant stated that Corpening was required to place the plaintiff on a PIP to spare her an adverse performance rating. (Decl. of Frank Corpening at ¶ 7.) The plaintiff, however, introduced evidence to rebut Corpening's assertions that he was required to place the plaintiff on a PIP and to show that the plaintiff was the only employee he had ever placed on a PIP in his six years as a supervisor at the FAA. (Decl. of Frank Corpening ¶ 23; Pl.'s Amended Opp'n at 9.) Thus, the plaintiff has presented sufficient evidence from which a trier of fact could conclude that the defendant's purported non-discriminatory reasons may be pretextual. *See Thorne v. Alexander,* 782 F.Supp. 677 (D.D.C.1992) (finding a plaintiff's sworn statement that contradicted a defendant's allegations to be sufficient evidence to support a finding of pretext); *see also Barbour v. Merrill,* 48 F.3d 1270,

1276 (D.C.Cir.1995) (holding a jury may infer pretext even if a plaintiff merely discredits the defendant's proffered reasons and shows they are unworthy of credence). Accordingly, the defendant's motion for summary judgment will be denied with respect to allegations of reprisal in paragraph 6(g) of the complaint.

**4. The plaintiff has established a prima facie case and created an inference of pretext with respect to her claims of retaliatory failure to promote.**

The plaintiff alleges in paragraph 6(p) of the complaint that the defendant failed to promote her in March 1993. The plaintiff is an African–American female, non-promotion is an adverse action, and the plaintiff has produced evidence to support an inference that she was qualified for the position. The remaining hurdle in a failure to promote claim is that the plaintiff must show as a part of her prima facie case that she was similarly situated to other employees, not in her protected group, who were promoted. *See Douglas v. Pierce,* 707 F.Supp. 567, 573 (D.D.C. 1988), *aff'd* 906 F.2d 783 (D.C.Cir.1990).

For two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of her employment situation are "nearly identical" to those of the employees who she alleges were treated more favorably. *See Carter v. Rubin,* 14 F.Supp.2d 22, 38 (D.D.C.1998) (citing *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C.Cir.1995)) *Mungin,* 116 F.3d at 1554. The plaintiff introduced sufficient evidence for a jury to infer that she was similarly situated to Mr. Estrella, a male employee promoted from GS–12 to GS–13 on June 27, 1993. (*See, e.g.,* Decl. of Harold LeBlanc, Ex. 1 (classifying Mr. Estrella as "an individual in a position similar to Ms. Childers").) The defendant contends that the plaintiff was not similarly

situated to Mr. Estrella because of her uniquely poor performance, as evinced by her placement on a PIP. (Def 's Mot. for Summ.J. at 13, 21, 23; Decl. of Frank Corpening ¶ 23.) The plaintiff, however, presented evidence to support an inference that she was placed on a PIP in retaliation for her instigation of an EEOC complaint in December 1992. (Decl. of Harold LeBlanc, Ex. 2; Compl. ¶ (6)(g).) Thus, the court need not rely on the PIP as a method of distinguishing between this plaintiff and otherwise similarly situated employees. Therefore, the court concludes that the plaintiff has established that she was similarly situated to Mr. Estrella, a male employee promoted to GS–13 in June 1993. Accordingly, the plaintiff has established a prima facie case of discriminatory and retaliatory failure to promote in paragraph 6(p) of the complaint.

 Having established a prima facie case of failure to promote, the court turns to the defendant's legitimate, non-discriminatory reasons for its actions. The defendant introduced evidence that Mr. Estrella had more experience and was more successful as an international program manager than the plaintiff. (Def.'s Mot. for Summ.J. at 14.) Specifically, the defendant articulated, and the plaintiff did not dispute, that Mr. Estrella has never had any behavioral problems and that Mr. Estrella received an "exceptional" performance rating in 1993. (Second Decl. of Frank Corpening ¶ 15, Pl.'s Rebuttal to the Decl. of Frank Corpening ¶ 24(G).) This court has held that comparative lack of qualification is a legitimate, nondiscriminatory reason for an employment action. *Fudd v. Secretary of the Treasury*, 690 F.Supp. 1, 4 (D.D.C.1986). Moreover, the defendant need not prove that the person who was promoted possessed superior objective qualifications, or that the defendant's choice was wisest, but only that the reasons for the decision were nondiscriminatory. *See Davis*, 802 F.2d at 641. Accordingly, the court concludes that the defendant has met its burden of production.

The plaintiff, on the other hand, does not produce any evidence to suggest that the defendant's reasons for selecting Mr. Estrella were sex or race based. Thus, the plaintiff has not established that the defendant's reasons are a pretext for discrimination. Accordingly, summary judgment will be granted with respect to the allegations of discriminatory failure to promote made in paragraph 6(p) of the complaint.

 The plaintiff does, however, establish an inference that the defendant's failure to promote her is a pretext for retaliation. Ms. Childers was denied the promotion in March 1993, on the heels of her participation in the EEOC grievance process in January and March 1993. (Decl. of Harold LeBlanc, Ex. 1, 2.) There are no facts to suggest that Corpening was without knowledge of the plaintiff's instigation of EEO complaints. The defendant articulated that the plaintiff was uniquely unqualified for a promotion because of her placement on a PIP. However, the plaintiff has presented evidence to support an inference that the PIP was imposed in retaliation for her participation in the EEO grievance process, and thus, that the defendant's reasons for denying her the promotion awarded to Mr. Estrella may be pretextual. Accordingly, summary judgment will be denied with respect to the allegations of non-promotion in reprisal made in paragraph 6(p) of the complaint.

5. **The plaintiff has established a prima facie case and created an inference of pretext with respect to her claims of failure to reassign her to the GS–334 computer specialist position during the NMCC detail.**

The plaintiff alleges, in paragraph 6(w) of the complaint, that she was denied a permanent reassignment to either a GS–343 program manager position, or a GS–334 computer specialist position in January 1994. While courts have determined that

a reassignment without attendant negative consequences does not constitute adverse action as a matter of law, the authorities suggest that a failure to reassign is a distinct cause of action, which can amount to an adverse action. *See, e.g., Jolly v. Listerman,* 672 F.2d 935, 953 (D.C.Cir. 1982) (stating that a failure to reassign was evidence of unlawful retaliation); *Stroman v. Blue Cross and Blue Shield Ass'n,* 966 F.Supp. 9 (D.D.C.1997).

█ The plaintiff, however, has not shown that the defendant's reasons for denying her request for reassignment to a **GS–343 position** are a pretext for discrimination or reprisal. The defendant articulated that each of the three men selected for a program manager position was more qualified than the plaintiff because of greater expertise, understanding and/or familiarity with the National Airspace System and environment, as well as greater supervisory experience and/or higher grade ratings. (Pl.'s Amended Opp'n, Ex. 11; Decl. of Dave Lantzy ¶¶ 15–17, 19–20.) The plaintiff attempts to establish a pretext by asserting that she trained two of the reassigned program managers. (Pl.'s Amended Opp'n at 22.) Even so, the plaintiff does no more than corroborate that she was qualified for the position. The court respects the defendant's discretion to choose among qualified candidates and concludes that this plaintiff has not offered any evidence to suggest a sex or race based reason for the failure to reassign her. Accordingly, the defendant's motion for summary judgment will be granted insofar as the plaintiff alleges a discriminatory or retaliatory failure to reassign her to a permanent **GS–343 program manager position** in January 1994.

█ The plaintiff has, however, created a genuine issue with respect to the defendant's proffered reasons for its failure to reassign her to a permanent **GS–334 computer specialist position.** Recalling that the prima facie burden is not onerous, the court concludes that the plaintiff has sustained her burden of establishing that she was qualified for the computer specialist position and that the failure to reassign her constituted an adverse action. Although the record is unclear as to whether Carroll Branscomb is a white selectee, the court assumes that she is based on the defendant's failure to dispute this fact. The prima facie case of discrimination is thus established.

The preceding analysis applies with equal force to the plaintiff's claim that she was denied the **GS–334 reassignment** in reprisal. With respect to the claim of reprisal, where the plaintiff filed EEO reports in January and March 1993 and the failure to reassign her occurred within one year thereafter, proximity in the sequence of events raises a presumption of causation. *See Batson,* 912 F.Supp. at 579; *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994) (concluding that employee had established prima facie case of reprisal where a demotion occurred less than two years after the filing of first complaint and six months after second complaint). The record further supports an inference that the defendant had knowledge of the plaintiff's prior EEO filings. Thus, the plaintiff has met her prima facie burden of establishing a case of reprisal.

The defendant articulated as its legitimate, nondiscriminatory reason that Carroll Branscomb was selected based on her ten years of experience in software development and telecommunications. However, the plaintiff presented proof that the job announcement for the computer specialist position applied exclusively to current FAA employees and that Carroll Branscomb was a temporary employee, ineligible for the reassignment. (Pl.'s Amended Opp'n at 22; Pl.'s Rebuttal to Def.'s Decl. of Dave Lantzy, Ex. 12–C; Pl.'s Amended Opp'n, Ex. 18.) The defendant responded that Carroll Branscomb was not hired as a systems engineer but rather as a telecommunications analyst to oversee the building of the NMCC's new software tool. (Def.'s Rep.Mem. at 21.) Although a close call, the court concludes

that the plaintiff has presented evidence to sustain an inference of pretext to the extent that Carroll Branscomb was ineligible for the reassignment. Accordingly, the defendant's motion for summary judgment will be denied insofar as the plaintiff alleges a discriminatory or retaliatory failure to promote or reassign her to the **GS–334 computer specialist position** in January 1994.

Having determined that paragraphs 6(g), (p) and (w) of the complaint in part withstand the defendant's motion for summary judgment, the court turns to consider the plaintiff's allegations that she was subjected to a hostile work environment.

### E. Hostile Work Environment

■ The defendant seeks summary judgment with respect to the plaintiff's allegations that she was subjected to a hostile work environment. The plaintiff alleges, at paragraphs 6(q), (r) and (t) of the complaint, that Jim Wilkins, a white male co-worker, subjected her to discriminatory and harassing treatment, resulting in a race and sex based hostile work environment. She alleges further that her supervisors did nothing to protect or defend her. (Compl.¶ 6(v).)

■ Title VII prohibits an employer from creating or condoning a discriminatory hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Conduct that does not create a hostile or abusive environment is beyond the purview of Title VII. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The existence of a hostile environment depends on the totality of the circumstances, including the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct reasonably interferes with the employee's work performance. *Stoeckel v. Environmental Management Sys., Inc.,* 882 F.Supp. 1106, 1114 (D.D.C.

1995) (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367). A hostile work environment may be abusive to employees because of their race, gender, religion, or national origin. *Park,* 71 F.3d at 906 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). This court has specified that the requirements for a prima facie case of hostile work environment based on sex or race are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was subject to unwelcome harassment; (3) that the harassment occurred because of the plaintiff's sex or race; (4) that the harassment affected a term, condition or privilege of employment; and (5) that the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment. *See Jones,* 12 F.Supp.2d at 11 (citing *Snowden v. Kelso, II,* 1996 WL 43549, *2 (D.D.C. Jan.31, 1996)); *Brumback v. Callas Contractors, Inc.,* 913 F.Supp. 929, 939 (D.Md.1995); *Owens v. Fraser Pub. Sch.,* 1995 WL 871216, * 9 (E.D.Mich. Oct.31, 1995); *see also Villines v. United Brotherhood of Carpenters,* 999 F.Supp. 97 (D.D.C.1998) (holding that a plaintiff alleging a hostile work environment must demonstrate the existence of *respondeat superior* liability); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2279, 141 L.Ed.2d 662 (1998) (holding that an employer's vicarious liability for a hostile working environment is subject to an affirmative defense looking to the reasonableness of the employer's conduct).

Paragraphs 6(q), (r) and (t) of the complaint state, respectively, in relevant part, that Jim Wilkins made unfavorable remarks regarding the plaintiff's placement on a PIP, that Jim Wilkins was instructed by Corpening to engage in "surveillance" of the plaintiff, and that Jim Wilkins consistently made unfavorable remarks to obstruct and discredit the plaintiff in the performance of her job duties. In support of her claims, the plaintiff recites a litany of events that she claims created a hostile work environment. (*See* Childers's Depo.,

Vol. III at 29–33, 35–39, 44–47.) Notwithstanding the truth of the alleged actions, the plaintiff has not demonstrated that any of the conduct of which she complains was related to her sex or race. Nor has the plaintiff established that any of conduct complained of interfered with her work performance. Furthermore, the plaintiff concedes that all of the alleged incidents involved Jim Wilkins and has failed to demonstrate that her workplace was permeated with discriminatory behavior. *See Owens,* 1995 WL 871216, *9 (concluding that one comment about "Buckwheat" did not create an abusive environment); *see also Snowden,* 1996 WL 43549, *3 (concluding that no prima facie case was shown based on shouting and pointing finger without evidence that conduct was related to sex); *Henry,* 902 F.Supp. 245, 251 (D.D.C.1995) (concluding that one cartoon about depression was insufficient to establish harassment based on disability).

Moreover, the record establishes that the plaintiff's employer took corrective and preventative action against Jim Wilkins. After the plaintiff brought Jim Wilkins's conduct to the attention of her detail supervisor, Lantzy investigated the allegations, determined that inappropriate comments had been made by Jim Wilkins (but that such comments were neither sex nor race based), wrote Jim Wilkins a letter of warning, and offered to have Jim Wilkins write a letter of apology to the plaintiff. (Decl. of Dave Lantzy ¶ 10; Def.'s Mot. for Summ.J., Ex. 7.) Thus, a review of the record reveals a reasonable, adequate and conciliatory effort by David Lantzy to identify, diffuse and rectify the interpersonal discord between the plaintiff and Jim Wilkins, thereby precluding the existence of *respondeat superior* liability.

In sum, interpreting all facts in a light most favorable to the plaintiff, the court rules that the plaintiff did not present sufficient evidence to permit a jury to conclude that she was subjected to a hostile work environment. Accordingly, the defendant is entitled to summary judgment with respect to the allegations in paragraphs 6(q), (r), (t) and (v) of the complaint.

### F. Damages

The complaining party in a Title VII action can recover damages as provided in 42 U.S.C. sections 1981(a) and (b). Thus, the court concludes that the defendant's motion for summary judgment is premature with respect to the plaintiff's allegations of back injury and other compensatory damages. Accordingly, the defendant's motion for summary judgment will be denied in this respect pending resolution of the plaintiff's surviving claims.

### IV. CONCLUSION

For the reasons set forth above, the court will grant in part and deny in part the defendant's motion for summary judgment. An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 22nd day of March, 1999.